U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

MEMO ENDORSED

United States District Courthouse
300 Quarropas Street
White Plains, New York 10601

August 8, 2011

**BY HAND**

The Honorable Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

*This matter will be taken up at the previously scheduled 8/18/11 proceeding.*

So Ordered.

Cathy Seibel, U.S.D.J.

Dated: 8/15/11

Re:   **United States v. Andrew Bartok**,
      S2 10 Cr. 510 (CS)

Dear Judge Seibel:

      The Government writes to advise the Court that, based upon its review of defendant Andrew Bartok's March 15, 2011 CJA 23 financial affidavit (the "CJA 23") and relevant documents, there appear to be material misstatements of fact on the March 15, 2011 CJA 23, which at a minimum, raise an issue as to whether Bartok properly qualifies for appointed counsel under the Criminal Justice Act.

      First, in the section listed "Cash," the question asks whether the defendant has "any cash on hand or money in savings or checking accounts?" The defendant checked the box marked "No." Based upon a review of records obtained from the New Jersey Division of Gaming and Enforcement and individual casinos in Atlantic City, New Jersey, for the period from February 5, 2011 through June 10, 2011, the Government has learned the following:

      (1) On or about February 5, 2011, Bartok bought $7,000 in chips at the Resorts casino and thereafter gambled, ultimately winning $520;

      (2) On or about March 4, 2011, Bartok bought $6,000 in chips at the Caesars casino and thereafter gambled, ultimately losing $1,200;

      (3) On or about March 11, 2011, Bartok bought $10,000 in chips at the Resorts casino and thereafter gambled, ultimately losing $7,825;[1]

---

[1] The amount of chips bought on this date amount to 20% of Bartok's claimed income – for the past 12 months – on the CJA 23. As set forth below, on June 11, 2011, Bartok

       (4) On or about March 17, 2011, Bartok bought $9,000 in chips at the
Resorts casino and thereafter gambled, ultimately winning $1,225;

       (5) On or about March 25, 2011, Bartok bought $8,000 in chips at the
Caesars casino and thereafter gambled, ultimately losing $700;

       (6) On or about March 26, 2011, Bartok bought $9,000 in chips at the
Resorts casino and thereafter gambled, ultimately winning $100;

(7) On or about April 1, 2011, Bartok bought $7,400 in chips at the Resorts casino and thereafter gambled, ultimately losing $95;

       (8) On or about April 3, 2011, Bartok bought $4,700 in chips at the
Tropicana casino and thereafter gambled, ultimately winning $1,600;

       (9) On or about April 8, 2011, Bartok bought $800 in chips at the
Resorts casino and thereafter gambled, ultimately losing $400;

       (10) On or about April 16, 2011, Bartok bought $11,000 in chips at the
Resorts casino and thereafter gambled, ultimately winning $375;

       (11) On or about April 30, 2011, Bartok bought $1,300 in chips at the
Resorts casino and thereafter gambled, ultimately winning $500;

       (12) On or about May 5, 2011, Bartok bought $5,800 in chips at the
Resorts casino and thereafter gambled, ultimately losing $5,800;

       (13) On or about June 10, 2011, Bartok bought $19,800 in chips at the
Resorts casino and thereafter gambled, ultimately winning $1,400; and

       (14) According to the New Jersey Division of Gaming Enforcement,
Bartok also gambled at other Atlantic City casinos, including as
recently as March 25, 2011 at the Showboat casino and May 15, 2011 at
the Taj casino.

       In addition, according to PNC bank, the balance in the Revelations Consulting, LLC account – on March 15, 2011 – was approximately $32,091. Although this account is a business checking account, the account has been and continues to be used to pay, in part, for what appear to be personal expenses of the Bartok family, including but not limited, to: (1) vacations to Orlando, Atlantic City and Aruba; (2) landscaping; (3) the Bartok family home electric bill; and (4) country

---

bought an amount of chips equivalent to approximately 40% of his claimed income for the past 12 months.

The Honorable Cathy Seibel
August 8, 2011
Page 3

club expenses (including over $1,300 in payments on March 9, 2011).[2]

      Second, in the section listed "Property," the question asks whether the defendant owns "any real estate, stocks, bonds, notes, automobiles, or other valuable property . . . ?" Bartok checked the box marked "Yes" and listed only an Individual Retirement Account. According to the New Jersey Department of Motor Vehicles, Bartok owns a 2009 Mercedes – which appears to be currently worth approximately $61,000 – that is registered to Andrew Bartok at the Bartok family home. According to American Express records, on June 25, 2009, Bartok charged $53,000 on his business credit card in connection with a purchase at Prestige Auto of Paramus, New Jersey – a Mercedes Benz dealership.

      In light of the above, it appears that there are material misstatements of fact in the CJA 23 concerning Bartok's ability to pay for counsel. The Government respectfully requests that the Court hold a conference in connection with this matter to determine whether: (1) appointed counsel is warranted; and (2) the misstatements of fact, certified under penalty of perjury, constitute a violation of Bartok's bail conditions.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: *[signature]*
John P. Collins, Jr
Assistant United States Attorney
(914) 993-1919

cc:    Peter Till, Esq. (by facsimile)

---

[2] In addition, the March 2011 PNC bank records for the Revelations LLC account show that as of at least March 7, 2011, Bartok's wife and son were still receiving payroll checks – totaling approximately $2,582 – from Revelations. Further, an amount equal to the amount of his son's payroll check was deposited into the Revelations' account on the same day that the check was issued.