Daaibars ag                    Sentence

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4            v.                              10 Cr. 510 CS

 5   ANDREW BARTOK,

 6              Defendant.

 7   ------------------------------x

 8                                      October 10, 2013
                                        10:45 a.m.
 9                                      White Plains, N.Y.

10   Before:

11                   HON. CATHY SEIBEL,

12                                     District Judge

13                      APPEARANCES

14   PREET BHARARA
          United States Attorney for the
15        Southern District of New York
     JOHN COLLINS
16   JEFFREY ALBERTS
          Assistant United States Attorney
17
     AMY ATTIAS
18        Attorney for Defendant

19   JOHN M. MARSH, Postal Inspector

20                      SENTENCE RESUMED

21

22

23

24

25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Daaibars ag                    Sentence

1           THE COURT:  Good morning again, everyone.

2           MS ATTIAS:  Good morning, Judge.

3           MR. COLLINS:  Good morning, your Honor.

4           THE COURT:  Please have a seat.  Let's pick up where

5   we left off.  Mr. Bartok, have you read the presentence report

6   and the addendum?

7           THE DEFENDANT:  Yes.

8           THE COURT:  And have you discussed them with

9   Ms Attias?

10           THE DEFENDANT:  I'm sorry, Judge, I'm having a problem

11   hearing in one ear.

12           THE COURT:  Have you discussed the presentence report

13   and the addendum with Ms Attias?

14           THE DEFENDANT:  As best we could, yes.

15           THE COURT:  Do you have additional matters you'd like

16   to discuss with her?

17           THE DEFENDANT:  If I could, yes.

18           THE COURT:  Go ahead.  I'll wait.

19           MS ATTIAS:  Well, Judge, frankly, we had about 40

20   minutes yesterday afternoon and 20 minutes this morning, and

21   what Mr. Bartok wanted to talk about with me, as I made very

22   clear before I left the counsel area downstairs, was the trial

23   and the facts of the case.  And I told him that this was not

24   the proper time to be discussing the facts of the case and the

25   incorrect and unjust conviction, that that would be a matter

Daaibars ag                    Sentence

1    for appellate counsel.

2              But as far as sentencing goes, one of the objections

3    that I would register is to the inclusion of the entire

4    government's version of the facts.  But I can get to that

5    momentarily.  We have discussed everything in the presentence

6    report that pertains to sentencing.  I stopped the conversation

7    when he started discussing trial strategy because I did not

8    think that this was the appropriate time for that.

9              THE COURT:  I think that's right.  Mr. Bartok, is

10   there anything about the contents of the presentence report in

11   particular that you wish to discuss with Ms Attias that you

12   haven't?

13             THE DEFENDANT:  The answer is yes, Judge.

14             THE COURT:  Why don't you point to the paragraph or

15   the sentence you're talking about and confer with her privately

16   on it.

17             THE DEFENDANT:  Let's take page 6.

18             THE COURT:  Privately.

19             (Pause)

20             MS ATTIAS:  Judge, I'd like to proceed.

21             THE DEFENDANT:  I'd like to object to something,

22   Judge.

23             THE COURT:  I don't want to overhear your

24   conversation.  I did hear Mr. Bartok say something about page

25   6.  Page 6 is just a description of what Mr. Bartok was charged

Daaibars ag                    Sentence

1   with.  There's no disputing that's what Mr. Bartok was charged

2   with.  So page 6 is not a problem.  But I do want the record to

3   be clear that Mr. Bartok has had an opportunity to raise any

4   objections he has to specific factual matters in the

5   presentence report that he thinks are wrong.

6          For example, Mr. Bartok, this is the time in the

7   sentencing where a client might tell a lawyer that there's some

8   mistake in the report regarding his family history or they got

9   something wrong about where he went to school or anything at

10  all.  He can also raise objections about the prior criminal

11  history, the facts of that, anything at all.  But it's not a

12  time to complain about the charges.  If there's something in

13  particular in this report that you think is inaccurate, this is

14  your chance to tell Ms Attias what it is specifically.  But

15  you're not allowed to say -- I'm not asking you to talk to

16  me -- you're not allowed to say that the report shouldn't

17  include things like what the charges are.  That's allowed to be

18  in the report.  You're not allowed to say the report shouldn't

19  include your criminal history.  I'm not asking what you should

20  or -- what you think should or should not be in the report.

21  I'm asking you to tell Ms Attias if there is anything that is

22  inaccurate in the report.  Not what you think should or

23  shouldn't be in there.  It's in there.  The question is is it

24  accurate.

25          THE DEFENDANT:  Judge.

Daaibars ag                    Sentence

1           THE COURT:  I don't want you to talk to me.  Talk to

2     your lawyer.

3           THE DEFENDANT:  I'm having a hard time talking to her

4     because she's shutting me down every three minutes.

5           THE COURT:  Speak now or forever hold your peace.

6           THE DEFENDANT:  I want to speak to the court about

7     this.  I think this is very serious what I have to say.

8           MS ATTIAS:  I actually have a list of what he would

9     like the Court to know and what he would like the record to

10    reflect about what he doesn't like about the report.

11          THE COURT:  Is there anything else, Mr. Bartok,

12    besides what Ms Attias has on her list that you want to object

13    to in the presentence report? That's a yes or no.

14          THE DEFENDANT:  The answer is yes.

15          THE COURT:  Right now I'm ordering you to turn to your

16    lawyer and tell her privately what, besides what she has on her

17    list, you object to, and we'll sit here and wait.

18          (Counsel confers with her client)

19          MS ATTIAS:  Judge, we can move on.

20          THE COURT:  All right.  Ms Attias, I know you read the

21    presentence report and the addendum and gone over it with your

22    client, but can you just confirm that for me for the record.

23          MS ATTIAS:  Yes, Judge.  We now finished in the

24    courtroom going through the last few paragraphs that he wanted

25    to point out to me.

Daaibars ag                    Sentence

1            THE COURT:  All right.

2            MS ATTIAS:  Despite your remarks a few minutes ago

3    mentioning that many of his objections to the presentence

4    report were not apropos I would like to include those just so

5    the record is complete.  At paragraph 76 it indicates, and

6    that's at page 18, that in 1993 after being convicted of bad

7    check, basically, he was sentenced to five years imprisonment

8    and that several months later that was converted to 18 months

9    of intensive supervision which he completed.

10           THE COURT:  Does the government have any information

11   to the contrary?

12           MR. COLLINS:  I don't -- the only information I have,

13   your Honor, is what's contained in the presentence report.  If

14   we had known about this obviously we could have talked to the

15   probation officer to try to find whatever documents she has.

16   Obviously, that has the potential, Mr. Bartok's recitation of

17   the facts has the potential of reducing the criminal history.

18   Because if he's saying that it's months --

19           THE COURT:  He says it was converted to 18 months.  I

20   don't know if the rest of it was parole or probation, but if

21   the sentence ended -- let me look at the guidelines.

22           MS ATTIAS:  I just want to be clear that I have not

23   confirmed that, of course.  And he is informing me that he

24   actually spent four months in jail before it was converted.  So

25   I don't know if it was converted or if he did four months of

Daaibars ag                    Sentence

 1   the five years and the rest was on probation.

 2            THE COURT:  18 months is sort of a boot camp thing.

 3            THE DEFENDANT:  It's like an intense supervision

 4   program.

 5            (Counsel confers with her client)

 6            THE COURT:  That may make a difference under the

 7   guidelines.  Let me just look.  If the sentence was less than

 8   ...

 9            MR. COLLINS:  I'm not sure that it would.  It

10   obviously would reduce the criminal history points.  If

11   Mr. Bartok is saying that he spent four months in prison that

12   would reduce the points from three to two.  However, two points

13   would still be Category II and it would still be two points

14   because it's a misdemeanor conviction that occurred within ten

15   years of the commencement of the offense which is charged in

16   Count 1, which is 2000.

17            THE COURT:  Then I will add to paragraph 77 the

18   following.  Well, I'll do this.  I'll add to paragraph 76 five

19   years imprisonment converted to four months imprisonment and 18

20   months intense supervision, and we'll call it a two-pointer.  I

21   don't think it will make any difference to anybody.  Five years

22   does seem like a lot for that offense, but of course, it was

23   the fourth fraud count.

24            MR. COLLINS:  Do we have to amend paragraph 78 as

25   well, your Honor?

Daaibars ag                    Sentence

1          THE COURT:  Yes.  Then it would change the total of

2     the criminal history points to two criminal history points,

3     Criminal History Category III.  All right.  What's next,

4     Ms Attias?

5          MS ATTIAS:  Judge, that was the only factual

6     discrepancy that Mr. Bartok pointed out in the report.  But

7     with your indulgence, I would just like to place his position

8     on the record.

9          THE COURT:  Absolutely.

10         MS ATTIAS:  He objects to the fact or raises the fact

11    that he was not informed by prior counsel, Ms Florio, that he

12    did not have to participate in this process, and has indicated

13    that he felt that was a violation of his rights.  He therefore,

14    along the same lines, objects to the inclusion of all of his

15    personal and family information.

16         He objects to the inclusion under the other arrests

17    section of cases which were dismissed.  That begins at page 19.

18         He objects to the inclusion in this at all, even in

19    the description of the charges, to the inclusion of Count 8, 9

20    and 10, 8 and 10 because they were severed and are not the

21    subject of this case, and 9 because he was acquitted of it.

22         One other issue he raised, although it wasn't raised

23    during trial, was that he discovered after trial that he was

24    diabetic and has raised with me that during trial he was not

25    fully mentally present or physically present because he was,

Daaibars ag                    Sentence

his blood sugar was out of control.  I have no personal
knowledge of this but I just wanted to place this on the record
and I do believe he is being treated for diabetes now.

I want to be clear in light of all of this that I will
be asking you to assign new appellate counsel.  Mr. Bartok has
raised very clearly with me several times his intention to
raise the issue of ineffective assistance of counsel as it
involves Ms Florio.  When I came into the case you may recall
that because I had prior been involved with the case in my
capacity with Federal Defenders, you made a record and asked
Mr. Bartok questions basically having him waive his right to
raise ineffective assistance as to my participation in the case
because he was bringing me in as retained counsel.  But he has
intent to file an appeal that goes to the ineffective
assistance of counsel as regards Ms Florio and I was part of
that trial team.  So I will be asking you to, unfortunately,
assign new appellate counsel because of the complaints about
trial strategy and many of the other conversations we've had
about the trial prior to these last couple of days.

I have one remark to make about the guidelines, but we
can talk about that later.

THE COURT:  First let me address the objections.

I have no idea if Ms Florio did or did not tell
Mr. Bartok that he had to participate in the process.  I would
imagine that Probation advises the defendant at the interview

Daaibars ag                    Sentence

1    about what it's all about.  But there's certainly nothing in

2    the report that would have come from Mr. Bartok that's going to

3    affect the sentence one way or the other.  His personal and

4    family data, which he objects to, is not going to move me

5    either way.  So if indeed Mr. Bartok participated in the

6    interview with Probation without knowing he could have refused,

7    I don't see how it harmed him at all.

8          The information regarding other arrests is appropriate

9    in a presentence report.  The Sentencing Guidelines and the

10   statute and the Supreme Court have said there is really no

11   limit on what the sentencing judge can consider in connection

12   with sentencing.  So there's nothing wrong with including it in

13   the report.  However, I'm not going to take any dismissed

14   charges into account anyway, because there's no proof that

15   Mr. Bartok did the things he was charged with.  I'm not going

16   to strike them from the report, but I'm not going to take them

17   into account either.

18         With respect to Counts 8, 9 and 10, the section of the

19   report that mentions them just describes what the defendant was

20   charged with and he was certainly charged with them.  The

21   report makes clear in paragraph 27 that the defendant was found

22   not guilty of Count 9 and that Counts 8 and 10 haven't been

23   tried, so the reader has a completely accurate picture of the

24   status of those counts.

25         And with respect to Mr. Bartok learning after the

Daaibars ag                    Sentence

trial that he was diabetic and his not being completely himself

during the trial, I will say I guess a couple of things.  One

is for that to warrant a new trial, that would have to have

been a very serious condition beyond feeling unwell.  I didn't

see any signs of that, and apparently, nor did counsel.  And

Mr. Bartok behaved himself during the trial, but I didn't see

any sign that he was in any way unable to comprehend what was

going on, and I saw his counsel speak to him and I saw him

speak to them.  And I don't doubt that if either Ms Attias or

Ms Florio, who was not shy about speaking up regarding

Mr. Bartok's medical condition, saw any signs that their client

was not competent or was out of it, they would have shared

those with me.  So those objections are overruled.

          Does the government have objections to the factual

recitation in the presentence report?

          MR. COLLINS:  No, your Honor.

          THE COURT:  And I guess, Ms Attias, you mentioned some

general objection to the government's version being in the

presentence report.  It is made clear that it's the

government's version, but if there are specific things in there

that you think were not supported by the proof at trial, I'll

be glad to hear you.  I certainly, having reviewed it, think

the gist of it was proven at trial abundantly.  So unless

there's something specific...

          MS ATTIAS:  There is not, Judge.  There is nothing

Daaibars ag                    Sentence

1   specific.

2              THE COURT:  All right.  Then the findings of fact in

3   the presentence report are my findings of fact.  Does the

4   government wish to be heard?

5              MR. COLLINS:  Your Honor, we've already submitted two

6   sentencing submissions, so unless there's anything else you'd

7   like to hear from the government, we'll rest on our memoranda.

8              THE COURT:  Thank you, Mr. Collins.

9              Ms Attias?

10             MS ATTIAS:  Judge, there is an issue that I just

11  wanted to raise so the record is complete but I chose not to

12  put into my sentencing letter because I didn't really, I wanted

13  to stick to 3553(a), which was really where I thought our

14  discussion should center, but that is the application of the

15  Sentencing Guidelines 5G1.2(d), the stacking provision, which

16  raised the guidelines from a potential 25 years, there are

17  counts that have 20 years maxes and counts that have five

18  years, to 95 years, which is the current guideline which is of

19  course Probation's recommendation and the government's

20  recommendation to give a guideline sentence.  And I will say

21  that I discussed this with the government.  I just am raising

22  it now for the purposes of having a full record.

23             5G1.2(d) uses the word shall when giving instructions

24  on how to compute the guidelines, whereas here the guidelines

25  of life are more than what would normally happen.  So stacked

Daaibars ag                    Sentence

1    up, meaning added up, the maximum amount of time for each one,

2    they come to four counts of 20 years each and three counts of

3    five years each for a total of 95.

4          The Second Circuit has addressed this, has approved

5    the application of the stacking provision but I don't believe

6    that it is mandatory.  And the circuits are divided on this.

7    There's not a lot of law on it.  It was applied here.  The

8    guidelines are 95 years.  I think the guidelines should be 25

9    years.  But even if you find that they are 25, I'm going to

10   have 3553(a) arguments to make.  So regardless --

11         THE COURT:  There are circuits that say even under the

12   guidelines -- obviously it's not mandatory because the

13   guidelines aren't mandatory -- but there are cases that say

14   that even under the guidelines, 5G1.2(d) is optional?

15         MS ATTIAS:  Yes, that it should be looked at on a

16   case-by-case basis.  And of course you would have the option of

17   sentencing him consecutively on each of these counts if you

18   chose to and if you found that that was supported by the facts

19   and the law.  So because that could exist, you could find that

20   these were all different conspiracies.  And I sort of look at

21   this, but I have a certain perspective in this courtroom,

22   obviously as one, as a charge of one big conspiracy to violate

23   the law and violations of law, that everything he did with his

24   business was one big conspiracy.  And I would argue against the

25   consecutive sentencing on each of the counts.  But you, of

Daaibars ag                    Sentence

 1   course, and the government would be free to argue, of course,

 2   that each of these different violations, each of these

 3   different counts, indicated a different mindset, different set

 4   of facts, different actions that had to be taken.

 5          For example, counts to defraud a bankruptcy judge,

 6   different than counts to defraud clients, etc.  So I didn't

 7   bring it up, I didn't want to bring it up in the sentencing

 8   letters because having done the research it was going to be

 9   pages and pages of argument to you about why you should or

10   should not apply 5G1.2(d).  But we have circled around to you

11   are possibly asking me couldn't I sentence him consecutively if

12   I found that was supported and if I thought that was fair and I

13   would have answered yes.  So you could.  And I would have

14   argued that you shouldn't.

15          THE COURT:  Which is the argument that you did make in

16   your sentencing letter.

17          MS ATTIAS:  Yes.  So I believe it's not a mandatory

18   application.  But again, I didn't want to spend too much time

19   on it.  I just wanted to bring that up here because with all

20   due respect to the framers of the guidelines, 95 years for

21   this, guidelines for any judge to look at, is kind of over the

22   top in my humble opinion.  So I would focus your Honor's

23   attention on 3553(a) as opposed to the guidelines.  But I did

24   want to note my observation on the guidelines.

25          THE COURT:  All right.

Daaibars ag                    Sentence

1          MS ATTIAS:  That said, I essentially rely on what I
2     wrote in my sentencing letter.  And knowing that a plea offer
3     had been made in this case that had a maximum of ten years,
4     certainly your Honor heard much more evidence during the course
5     of the trial because Mr. Bartok chose to go to trial as opposed
6     to avail himself of the plea offer.  But I would suggest, and
7     it's not me suggesting, the law is clear that he should not be
8     penalized for exercising his constitutional rights to go to
9     trial.  And looking at all of the factors that I mentioned in
10    my letter and talked about and I know you've had a tremendous
11    amount of interaction with Mr. Bartok over these last few
12    years, I would suggest to you that between his health issues,
13    which I'm not saying deserve a variance, and his age, again not
14    so much in terms of a variance but as under 3553(a), and the
15    issues that he's had with gambling for many, many, many years,
16    that as opposed to simply looking at his operating his business
17    as a money-making scheme intentionally defrauding people, what
18    I said in my letter was that it seems to me that that whole,
19    the whole business that he was involved in was almost like one
20    huge craps table.  That he would play.  That it was a game.  He
21    would figure out what motions to do and what things to say and
22    what things not to say, and it kept it going and going and
23    going.
24          I understand that the jury convicted him.  He
25    certainly intends to appeal.  But taking into account the

Daaibars ag                    Sentence

```
 1   gambling, his health, his age, what he did, the relative
 2   culpability, the relative sentences for other crimes that get
 3   sentenced in this building, I would suggest that something in
 4   the area of six to eight years adequately punishes him under
 5   3553(a) for what he was convicted of without going over the
 6   top.  I'm not even going to talk about the guidelines, their
 7   calculation here driven by the amount.  It's hard to imagine
 8   anyone giving him a guideline sentence, although I respect the
 9   government's suggestion and Probation's suggestion.  But Judge,
10   when you look at what is sufficient but not greater than
11   necessary, I think that something in that range is appropriate
12   here.  And I otherwise stand by whatever remarks I made in my
13   letter.
14            THE COURT:  All right.  I note that Mr. Bartok
15   objected to the information in the presentence report that he
16   provided to Probation.  I guess that would include the
17   information about his health.  So on the one hand, he's asking
18   me to take it into account; on the other hand, he doesn't think
19   it should be in there.  Which is a certain irony.
20            MS ATTIAS:  I didn't really think of that, Judge.
21            THE COURT:  As well as his gambling history.  However,
22   I didn't need a presentence report to tell me about
23   Mr. Bartok's gambling history.  And with respect to the health
24   issues, I'm going to consider them over his objection because
25   considering them can only help him.  I'm not saying it will
```

Daaibars ag                    Sentence

1   help him.  But it can only help him, it's certainly not going

2   to hurt him.

3           And with respect to his mental and emotional health

4   and gambling history, again I think those things can only help

5   him in terms of this sentencing.  The part that hurts him comes

6   from the trial record.  So I'm going to essentially let him

7   have his cake and eat it too.

8           Mr. Bartok, if there's anything you'd like to say

9   before I impose sentence, I will hear you at this time.

10          THE DEFENDANT:  Yes, Judge.

11          THE COURT:  It's all right with me if you want to stay

12  seated.  If you're more comfortable sitting down it's all right

13  with me.

14          THE DEFENDANT:  Okay.  Thank you.

15          I just want to focus in on one thing that I think is

16  going to be very inflammatory and prejudicial against me when

17  the Bureau of Prisons receives this report, and I guess they

18  read it and they review it as far as your classification and as

19  far as future parole or probation reports.  And the part that I

20  object to is that I'd like, if it's possible, to take out the

21  arrests where the cases were dismissed.  Because there was no

22  probable cause to arrest me.

23          THE COURT:  That objection is denied.

24          THE DEFENDANT:  It colors me in a bad light, Judge.

25  The arrests, they were dismissed.  Why should they even be in

Daaibars ag                    Sentence

1   the report?

2          THE COURT:  The arrests happened.  They're part of

3   your criminal history.  There is no indication as to why they

4   were dismissed.  I'm certainly not taking them into account.

5   But the Bureau of Prisons when they decide what to do with a

6   person I think they're entitled to know whether somebody is

7   someone who has had no previous contact with the law or whether

8   he had previous frequent contact with the law, even though the

9   cases were dismissed.  There's nothing about them, it seems to

10  me, that is any different in kind than the convictions.

11  They're all theft, fraud, trickery sort of offenses, except for

12  possession of marijuana.  It's hard to imagine that any of that

13  is going to have any effect on Mr. Bartok's designation.  But

14  to the extent it does, he can always take that up with the

15  Bureau of Prisons.

16         THE DEFENDANT:  So that would be the appropriate place

17  to take it up, with the Bureau of Prisons?

18         THE COURT:  You can always have -- if you're unhappy

19  with what happens to you in the Bureau of Prisons, they have

20  methods for you to address them.

21         THE DEFENDANT:  I just didn't see that if the case was

22  dismissed, how I would have to have that held against me.

23         THE COURT:  It's not being held against you.  Let's

24  move on.

25         THE DEFENDANT:  Maybe not in this court.  I'm saying

Daaibars ag                    Sentence

1    it might be held against me by Probation.

2             THE COURT:  It's on your rap sheet.  Whether it's in

3    the report or not, the information is out there.

4             THE DEFENDANT:  It's on my rap sheet, granted, but if

5    the case was dismissed, there was no probably cause.  It

6    shouldn't be reported.

7             THE COURT:  No.  That's your problem.  You don't get

8    it that the case being dismissed doesn't mean there was no

9    probable cause.  The case could have been dismissed for any one

10   of a number of reasons and we don't know what the reasons are.

11   It's a misperception on your part that a dismissed case means

12   there what was no probable cause.  The case could have been

13   dismissed because the victim didn't want to pursue it.  The

14   case could have been dismissed because the witness died.  The

15   case could have been dismissed because the officer didn't show

16   up for court.  The case could have been dismissed because the

17   prosecutor was busy with more important things.  The case could

18   have been dismissed for any number of reasons.  It doesn't mean

19   there was no probable cause to arrest.  It could be that.  But

20   I don't see any indication of that.  I'm not taking it into

21   account and I'm not here to adjudicate what the Bureau of

22   Prisons may or may not take into account.  If you have a

23   grievance with the Bureau of Prisons, there's a grievance

24   procedure.

25             THE DEFENDANT:  My grievance is just that I thought my

Daaibars ag                    Sentence

1    arrest would color me in an improper light.

2             THE COURT:  Anything more you want to stay?

3             THE DEFENDANT:  That's it, Judge, thank you.

4             THE COURT:  That's all you want to say?

5             THE DEFENDANT:  That's all I want to say.  Short

6    today.

7             THE COURT:  That's fine.  You don't have to say

8    anything of course.

9             Let me make clear, I don't want to hear anything more

10   about the dismissed counts in the presentence report.  But if

11   there's anything else you would like to say on other subjects

12   before I sentence you, now is your opportunity.

13            THE DEFENDANT:  No, I'm fine.

14            THE COURT:  Okay.  Mr. Collins, did you want to say

15   something?

16            MR. COLLINS:  I just wanted to note for the record

17   that Mr. Turk has appeared and is sitting behind us at counsel

18   table.

19            THE COURT:  Hello Mr. Turk.

20            MR. COLLINS:  Obviously it's not indicated in the PSR,

21   the PSR was originally completed back in May, but just so that

22   there is a factual basis when your Honor is entering the

23   restitution and forfeiture numbers, that the restitution

24   numbers 2,929,411, and that is on the spreadsheet that you

25   noted you had received yesterday and has been provided to

Daaibars ag                    Sentence

 1    Ms Attias ––

 2          THE COURT:  I did have, we can do it now, I did have

 3    some questions about the the restitution and forfeiture, just

 4    procedurally.

 5          MR. COLLINS:  Maybe I should just respond, maybe it

 6    makes more sense for me to respond.  Previously I think one

 7    thing that Ms Attias said before sort of going on to the

 8    mechanics of the restitution and the forfeiture, which is that

 9    sort of this was a game that Mr. Bartok was playing.

10    Previously earlier I had said we would rest on our sentencing

11    memorandum, but the notion that this was some sort of a game

12    that Mr. Bartok was playing is simply outrageous.  These were

13    people's lives.  I know that Ms Attias has conveyed

14    Mr. Bartok's version of the events as set forth in her most

15    recently sentencing memoranda, that he consistently maintained

16    that he helped people and did not violate the law.  Both are

17    demonstrably wrong on all accounts.  It's just inconceivable

18    how somebody could receive all these victim impact statements

19    which are unanimous in the devastation that Mr. Bartok wreaked

20    upon their lives, people who lost their homes, people who gave

21    him essentially their last money, were thrown out of their

22    home, had no way to support their handicapped children and had

23    nowhere to go.  One person who was living in a family member's

24    office.

25          The notion that Mr. Bartok believes that he actually

Daaibars ag                    Sentence

1    assisted people, I frankly can't understand it.  The notion

2    that he didn't violate the law even though along the way it is

3    clear he was told that what he was doing was wrong, and that

4    Mr. Bartok, what he just always does when told no, is that he

5    either seeks to delay or just argues back that you're wrong.

6    That's consistently what he's done and that's how he's

7    consistently violated the law.  But the notion that this was

8    done to fuel his gambling issues, that was refuted at trial

9    through the testimony of Mr. Burke.  While yes, Mr. Bartok

10   spent a lot of money gambling in both Aruba and Atlantic City,

11   it is clear that the money that came in from the defrauded

12   clients afforded Mr. Bartok and his family a lavish lifestyle.

13   That was more than gambling.  It afforded them a high-end car,

14   country club memberships, travel all over the place, dinners

15   out that the people who they were defrauding would not get the

16   chance to have because they were paying Mr. Bartok.  As a

17   result, that's why the government believes that a lengthy

18   sentence is appropriate in this case.  And I'll move on to

19   discuss restitution and forfeiture, your Honor.

20           THE COURT:  Procedurally, there's got to be more to it

21   than just the government gives me a piece of paper the night

22   before.  I'm just looking at 3664.  It says I shall order the

23   probation officer to obtain and include in the presentence

24   report or in a separate report information sufficient for me to

25   exercise my discretion in fashioning a restitution order.  The

Daaibars ag                    Sentence

1  report shall include a complete accounting of the losses, blah,

2  blah, blah.  Then that has to be disclosed to both sides.  And

3  there's a whole procedure we have to go through and then it

4  gets treated like any other sentencing fact.  There can be

5  objections and a hearing and all that.

6      MS ATTIAS:  Judge, I will say that I have been having

7  conversations with the government for weeks about the amount of

8  loss.  Although some of the paperwork came down in the last few

9  days, these numbers are not a surprise to me, and I'm not

10  challenging the loss amount.  I understand there are other

11  procedures you're talking about.

12      THE COURT:  That gives me some comfort.  It seemed to

13  me there was no opportunity for the defendant to object or even

14  review those numbers if they were only provided Tuesday night,

15  I believe it was.

16      MR. COLLINS:  The government's position is that the

17  loss amount is higher than the restitution amount.  The

18  restitution amount is based upon the amount of payment cards

19  that were recovered plus any other submissions that were made

20  to the government by people who said they had paid Mr. Bartok X

21  amount for services.  We believe the loss amount is much higher

22  than the three million dollars that's here.  However, this is

23  what we can point to in terms of proof, in terms of either

24  payment cards that we recovered from Revelations, or

25  submissions in terms of victim impact statements that were made

Daaibars ag                    Sentence

1    and those numbers.  People were submitting numbers up and to

2    and including the September 26th package that you received,

3    your Honor.  I believe some of those victim impact statements

4    had more numbers as well.

5              THE COURT:  So Ms Attias, have you had an opportunity

6    or do you want a greater opportunity to examine the restitution

7    numbers which I'm now hearing are less than the loss numbers,

8    because we can always do restitution after sentencing?

9              MS ATTIAS:  Mr. Collins and Mr. Alberts and myself

10   have been discussing these numbers for weeks.

11             THE COURT:  Restitution and loss numbers?

12             MS ATTIAS:  Yes.  We discussed their methods of

13   arriving at those numbers.  I tried to shove them around a

14   little bit.  We had a very full discussion about the numbers,

15   and I'm satisfied that I do not need any more time or

16   opportunity to challenge any of the numbers.

17             THE COURT:  All right.

18             MR. COLLINS:  For the record, your Honor, we

19   mentioned, we believe, the loss amount is higher than the 2.92

20   million figure because that's the number that we can point to

21   and we have a basis in fact for.  That's why although we

22   believe there's a larger loss amount, then that larger loss

23   amount can be forfeited because we can't point to a specific

24   number, we're defaulting to the lower number of the 2.92

25   million.

Daaibars ag                    Sentence

1          THE COURT:  Let me understand the government's

2    position.  Your position is the loss amount is what?

3          MR. COLLINS:  Somewhere greater than four million

4    dollars.

5          THE COURT:  And your position on the restitution

6    amount is.

7          MR. COLLINS:  2,929,411.

8          THE COURT:  What are you seeking in forfeiture?

9          MR. COLLINS:  We're seeking the same amount.  Because

10   that's a figure that we can actually give, we can actually have

11   a basis for rather than essentially sort of a guesstimate.

12         THE COURT:  And that's based on either the payment

13   records seized from the defendant's offices or information

14   you've received from the victim?

15         MR. COLLINS:  I'm sorry, your Honor, just one moment.

16         (Pause)

17         MR. COLLINS:  I'm sorry, your Honor.  My understanding

18   is that the numbers are based upon payment cards that were

19   taken from Revelations during the course of the search or

20   payment cards that were tendered to the government by Veronica

21   Tobin.  In addition, there is the basis in terms of deposits

22   that were made into the Revelations bank account being money

23   orders and checks.  And further, information that was submitted

24   from the victims themselves through victim impact statements.

25         THE COURT:  And I take it you took care not to double

Daaibars ag                    Sentence

1   count.  If a payment card had a corresponding check, you didn't

2   count it twice.

3            MR. COLLINS:  Yes, we did not count it twice.

4            THE COURT:  Okay.

5            MR. COLLINS:  And there are instances in which people

6   asked, some of the people asked for an amount that equaled the

7   amount of their house or what they thought their house was

8   worth.  We were only seeking to put into the restitution the

9   amounts that they were claiming they had paid Mr. Bartok, not

10  what they believed their ultimate harm was, i.e., for some

11  individuals who were looking to have a new house bought for

12  them.

13           THE COURT:  All right.  As to forfeiture, I got a

14  preliminary order of forfeiture last evening.  We don't have

15  any jury finding on the forfeiture issues.  Is it enough that

16  there were forfeiture allegations in the indictment and the

17  defendant got convicted?  Doesn't the jury have to make some

18  kind of finding?

19           MR. ALBERTS:  No, your Honor.  If either of the

20  parties request a jury finding on the issue, then there is a

21  jury finding.  But in the absence of that, the Court can make a

22  finding or forfeiture.

23           THE COURT:  Where do I get that from?  You know this

24  statute better than I do, I think.  I see it, Rule 32.21(a).

25  "As soon as practical after a verdict or finding of guilty or

Daaibars ag                    Sentence

1   after a plea on any count in an indictment regarding which

2   criminal forfeiture is sought, the Court must determine what

3   property is subject to forfeiture under the applicable statute.

4   The court's determination may be based on evidence already in

5   the record including any plea agreement and on any additional

6   evidence or information submitted by the parties and accepted

7   by the court as relevant and reliable.  If forfeiture is

8   contested, on either party's request the court must conduct a

9   hearing after the verdict or finding of guilty."  I must

10  promptly enter the preliminary order of forfeiture.  I must do

11  it sufficiently in advance of sentencing to allow the parties

12  to suggest revisions or modifications unless doing so would be

13  impractical.

14        Does the defendant contest the forfeiture?

15        MS ATTIAS:  No, Judge.

16        THE COURT:  What, as a practical matter, Mr. Alberts,

17  is the difference between the forfeiture order and the

18  restitution order?  I know it's all very good for stats.  Why

19  does the government seek both?

20        MR. ALBERTS:  Your Honor, we seek both for a couple of

21  reasons.  One is in some instances they actually seek to

22  capture very different numbers.  In this case we're seeking the

23  same forfeiture amount and restitution amount.  The reason why

24  we seek both orders is first of all there are certain

25  procedural mechanisms where we're able to acquire property that

Daaibars ag                    Sentence

 1    is subject to forfeiture that we could not employ to go after

 2    money that's subject to restitution.  So there's different

 3    statutes that allow us to pursue money that is abroad, for

 4    example, that we could then acquire, forfeit, and provide

 5    through the restoration mechanism to victims of the offense

 6    that we could not use if there was simply a restitution order.

 7            THE COURT:  Do you think Mr. Bartok has some property

 8    or money salted away abroad?

 9            MR. ALBERTS:  We don't know.  He regularly went to

10    Aruba.  We don't know what the properties are, we haven't been

11    able to ascertain that.  But it's always possible.  We always

12    seek these orders in case we acquire information that would

13    allow us to go after properties that wouldn't be available to

14    us under the restitution statute.

15            THE COURT:  It does seem proper so I'm -- did I cut

16    you off?

17            MR. ALBERTS:  The Second Circuit has also recognized

18    that it's appropriate to include both orders.  Entering an

19    order of forfeiture does not -- or entering a restitution order

20    does not preclude the order from seeking forfeiture under the

21    applicable statutes.

22            THE COURT:  All right.  I have signed the preliminary

23    order.

24            Let me start with the 3553(a) factors.  Let me start

25    with the Sentencing Guidelines, actually.  Mr. Bartok has the

Daaibars ag                    Sentence

1   distinction of being one of the few fraud defendants who has so

2   many specific offense characteristics applicable to him that he

3   has himself up to the level of a murderer.  His base offense

4   level is seven under 2B1.1(a)(1).  18 levels are added under

5   2B1.1(b)(1)(J) because the offense involved more than 2.5

6   million dollars.  Six levels are added under (b)(2)(C) because

7   the offense involved 250 or more victims.  Two levels are added

8   under (b)(9)(B) because the offense involved bankruptcy fraud.

9   Two more levels are added under (b)(10)(C) because the offense

10  otherwise involved sophisticated means.  And two levels are

11  added because the offense substantially endangered the

12  financial security of 100 or more victims under (b)(15)(C).

13  Four levels are added under 3B1.1(a) for defendant's role in

14  the offense.  He was the organizer and leader of criminal

15  activity that involved five or more participants and was

16  otherwise extensive.  Two levels are added for obstruction of

17  justice, although I don't get there quite the same way as the

18  probation officer.  The probation officer sort of went directly

19  to 3C1.1 and I think that's what you do when the defendant

20  obstructed his criminal case.  What I do, which comes out to

21  the same place, is I go to 2J1.2 which is the obstruction of

22  justice guideline.  That in turn sends you to 3C1.1 and per

23  note 8, as the Probation Office notes, the obstruction counts

24  are grouped with the fraud counts and then two levels are

25  added.  So we may have been talking about the same thing and

Daaibars ag                    Sentence

1    they may have just done it in shorthand in the Probation

2    Report.  That gets us up to level 43 for the total offense

3    level.

4              The defendant has four previous convictions.  A fraud

5    conviction from 1981 which does not result in any criminal

6    history points because of his age.  An odometer fraud

7    conviction from 1986 which also does not result in any criminal

8    history points.  A false records conviction from 1992 which

9    also does not result in any criminal history points but which

10   involves the falsification of certificates of title for a Ford

11   Bronco and a Cadillac.  And a theft by deception and issuing a

12   bad check conviction from 1994 which results in two criminal

13   history points per our earlier discussion and which involved a

14   bad check and somehow getting some money by deception from an

15   individual.  Two criminal history points puts the defendant in

16   Criminal History Category II and his guidelines range is life.

17             Whether to impose -- I can't impose a life sentence

18   because none of the counts of conviction have a maximum of

19   life.  So under 5G1.2(d) the guideline sentence is capped at

20   the maximum sentences as stacked -- actually the guideline

21   sentence is life but essentially the guidelines direct me if I

22   can't impose life to cap it at whatever the statutory maximums

23   are and impose all the sentences consecutively.

24             I agree with Ms Attias that that's sort of ridiculous

25   in this case.  And I'm not going to impose 95 years.  But I am

Daaibars ag                    Sentence

going to impose a long sentence.  I don't find that the 95

years is an incorrect application of the guidelines, but under

my authority under *Booker* to vary, I'm going to vary.

Where I'm going to end up is going to depend on the

3553(a) factors, the first of which is the nature and

circumstances of the offense.  This is about as serious a white

collar offense as one comes across in the day-to-day life of

this courthouse.  Mr. Bartok did something that most people

could not bring themselves to do, which is he ripped off

vulnerable people who he knew were coming to him in

desperation, and who were petrified of losing their houses.

And the only thing he gave them was the opportunity to be

suckered out of more of their money before they ultimately lost

the house.  And if indeed he was just a good guy trying to help

them stay in their houses, there was no need for him to lie to

them the way he did.  And even if he was a good guy trying to

help them stay in their houses, it doesn't excuse all the lies

he told to the bankruptcy court.

And we heard from some of the victims at trial

including one who got dragged out of his bed in handcuffs in

front of his family because of Mr. Bartok's lies to him and to

the bankruptcy court.  And I read the letters, which are

heartbreaking, describing how these desperate people thought

Mr. Bartok was going to help them and how desperate they were

to believe him and how he ended up making things that much

Daaibars ag                    Sentence

 1    worse for them and how stupid they now feel for having believed

 2    him.

 3              And Mr. Bartok was running this business for many

 4    years.  He knew perfectly well that he wasn't helping anybody

 5    buy their house back at a foreclosure auction.  That was just

 6    complete bull.  And Mr. Bartok knew it.  He's a very

 7    accomplished con man and it's part of being a con man that at

 8    some point you start to believe your own bull.  It's effective

 9    when you act like you really believe your own bull.  But it

10    cannot have failed to cross Mr. Bartok's mind as he told each

11    of those poor desperate homeowners in his office about how they

12    would be able to get their homes back at a foreclosure auction

13    that he had never gotten anybody's home back at a foreclosure

14    auction.  I don't think it's an overstatement to say it's

15    really despicable conduct, and unlike a lot of crimes that

16    people commit where the consequences are sort of removed.  If

17    you sell a kilo of coke, you don't see the addict who uses it

18    or the crackhead who is living under a bridge somewhere.  You

19    don't see the children who are neglected by that person.  You

20    can sort of distance yourself, which doesn't excuse anything.

21    But in this case, Mr. Bartok met all the desperate people and

22    screwed them, pardon the colloquialism, without any regard

23    whatsoever for the havoc he was wreaking on these people he

24    knew and who he knew were depending on him and who would call

25    him in desperate panic situations after they realized that he

Daaibars ag                    Sentence

had done nothing but postpone the inevitable and take their

money in the meantime.  And he just did not care about them at

all.  All he cared about was his own greed.  He was a scary

individual in that regard.  And a very dangerous one.

        That takes me to the history and characteristics of

the defendant.  He's got four previous convictions for fraud

type offenses.  Those were small potatoes compared to this one,

of course.  But he's one of the most selfish and manipulative

people I've ever seen in a courtroom and that's saying a lot.

I have, through my line of work, met a lot of con men and

Mr. Bartok is one of the most conscience-free and manipulative

and narcissistic of that bunch.  Four prior convictions didn't

seem to pierce what little there might be of his conscience.

        And as I said, this particular fraud went on for a

long time and he knew for many years that he wasn't helping

people keep their houses and just kept going because he doesn't

care about those people.  And he took the proceeds and he made

a very nice life for himself.  He's driving a Mercedes, he's

going to Aruba for weeks and months at a time, he's going to

Atlantic City, he's living high on the hog at the expense of

his victims.  I don't doubt that he provided well for his

family.  It's just that it was with other people's money.

        For reasons I don't understand, Mr. Bartok's wife and

sister have stood by him.  Ms Bartok told Probation that she

doesn't think her husband did anything wrong and she feels he's

Daaibars ag                    Sentence

1    not a threat to society and he's served enough time.  Given

2    that she sat here for the trial, that is one of the more

3    massive either whoppers or cases of denial I've ever seen.  I

4    don't see how you could sit through the trial and not think

5    Mr. Bartok did anything wrong or that he's already served

6    enough time.  But I'm sure she, after enjoying the fruits of

7    his fraud, is in a difficult place right now and prefers to

8    delude herself.  She also probably knew about the four previous

9    convictions and it's hard to imagine that she didn't know while

10   this was going on that her husband was not legitimately raking

11   in all this money.

12           But it is to his credit that Mr. Bartok apparently has

13   been a good brother and husband who has inspired that loyalty.

14   But that's about the only good thing I can say about Mr. Bartok

15   based on what I know.

16           I have to insure that the sentence imposed reflects

17   the seriousness of the offense.  I've already talked about

18   that.  I have to consider the need for the sentence imposed to

19   promote respect for the law.  That is obviously an issue with

20   Mr. Bartok, not only the four prior convictions, but the

21   injunctions by the bankruptcy court that he disregarded.  He is

22   somebody who has no respect for the law.  And his conduct

23   during the course of this trial, the course of this case,

24   convinces me that he thought he could put one over on this

25   Court.  So only a really significant sentence has a chance of

Daaibars ag                    Sentence

waking Mr. Bartok up to the need to conform one's conduct to
the law.

          I need to provide a just punishment that will be seen
by victims and by society to be sufficient to address
Mr. Bartok's behavior.  I need to afford adequate deterrence,
not just to him but to other people out there.  There are a lot
of these mortgage foreclosure rackets and other people ought to
see what can happen if you do it.  Protecting the public from
further crimes is a very important factor in Mr. Bartok's case.

          I see zero chance that if he were at liberty he would
conform his conduct to the requirements of the law.  And I
think he does need to be locked up so that he cannot have the
capacity to commit further crimes.  I don't think the need for
treatment is a factor here.  Mr. Bartok has health issues that
can be treated either inside or outside the Bureau of Prisons.
I have considered the Sentencing Guidelines and the
Commission's policy statements.  In this case the way the
guidelines come out, which equates this defendant's sentence
with somebody who has committed murders, doesn't make a lot of
sense.

          I do recognize why each of the factors that the
Commission has applied in 2B1.1 and which apply, throughout the
guidelines, and which apply in this case, are aggravators.
There's no question that Mr. Bartok deserves a very, very
substantial sentence.  But 95 years for someone who is 67 is

Daaibars ag                    Sentence

1    just a little crazy.

2            I've considered the need for avoid unwarranted

3    sentencing disparities among similarly situated defendants.

4    And Mr. Bartok isn't a Bernie Madoff, but he's in a lot of ways

5    a miniMadoff.  But the most important factors here are the

6    absolutely despicable nature of the offense, the incorrigible

7    selfishness and manipulation of the defendant, and the need to

8    protect the public from further crimes.

9            So the sentence that I find sufficient but not greater

10   than necessary to serve the purposes of sentencing is one that

11   I recognize will amount to a life sentence for Mr. Bartok.  Let

12   me just check my math.  264 months.  22 years.  I note that

13   Probation was recommending the guideline sentence of 95 years

14   which was a surprise, and the probation officer said the

15   recommendation was not made lightly and it essentially means a

16   life sentence for the defendant.  So Probation shares my view

17   that this defendant is really the worst of the worst in terms

18   of fraudsters.  As I said, I recognize that at Mr. Bartok's age

19   this is essentially a life sentence and I think it's

20   appropriate.  He's been committing fraud for a good part of his

21   life and he's paid a very minimal price for it up until now and

22   now the chickens have come home to roost.

23           I'm going to impose the sentence as follows.  On

24   Counts 1, 2, 5 and 7 I'm imposing 20 years on each count which

25   is the maximum, to run concurrent to one another.  And on

Daaibars ag                    Sentence

1   Counts 3, 4 and 6, I'm going to impose 24 months to run

2   concurrent with one another and consecutive to each other --

3   excuse me -- and consecutive to the sentences on Counts 1, 2, 5

4   and 7.  And that is the sentencing "plan" that I would

5   reconsider if any of the counts were to be reversed on appeal

6   in a way that would affect the total.

7            I have to impose supervised release.  And who knows,

8   maybe Mr. Bartok will surprise us and get out of jail as an old

9   man.  In that event, I'm going to impose supervised release of

10  three years on each count to run concurrently on the following

11  conditions.  First the manda tory conditions.  The defendant

12  shall not commit another federal, state or local crime.  The

13  defendant shall not illegally possess a controlled substance.

14  The defendant shall not possess a firearm or destructive

15  device.  The defendant shall cooperate in the collection of DNA

16  as directed by the probation officer.  I'm going to suspend the

17  mandatory drug-testing conditions because I find the defendant

18  poses a low risk of future substance abuse.

19           I'm also imposing the standard conditions 1-13 along

20  with the following special conditions.  The defendant shall

21  provide the probation officer with access to any requested

22  financial information.  The defendant shall not incur new

23  credit charges or open additional lines of credit without the

24  approval of the probation officer unless the defendant is in

25  compliance with an installment payment schedule with respect to

Daaibars ag                    Sentence

his criminal financial obligations.  The defendant shall

refrain from participating in mortgage foreclosure or

bankruptcy matters.  The defendant shall submit his person,

residence, place of business, vehicle or any other premises

under his control to search on the basis that the probation

officer has reasonable belief that contraband or evidence of a

violation of the conditions of release may be found.  The

search must be conducted at a reasonable time and in a

reasonable manner.  Failure to submit to search may be grounds

for revocation.  The defendant shall inform any other occupants

that the premises may be subject to search pursuant to this

condition.  The defendant is to report to the nearest Probation

Office within 72 hours of release from custody.  I recommend

the defendant be supervised by his district of residence.

I'm imposing the mandatory one hundred dollar special

assessment on each count for a total of $700 which is due

immediately.  And I am imposing restitution in the amount set

forth in the spreadsheet that the government has provided in

the total amount of $2,929,411.  I will incorporate that spread

sheet, it will be attached to the judgment, into today's

record.  And I am ordering that that restitution amount be

joint and several with co-defendants Kathleen Addario and

Veronica Tobin.

I'm further directing that if the defendant is engaged

in a Bureau of Prisons nonUNICOR work program that he shall pay

Daaibars ag                    Sentence

$25 per quarter towards the criminal financial penalties.  If

he participates in the Bureau of Prisons UNICOR program as a

Grade 1-4 he shall pay 50 percent of his monthly UNICOR

earnings towards the criminal financial penalties consistent

with Bureau of Prisons regulations at 28 CFR 544.11.  The

restitution shall be paid in monthly installments of ten

percent of gross monthly income over a period of supervision to

commence 30 days after the date of judgment or the release from

custody.  The defendant shall notify the United States Attorney

for this district within 30 days of any change of mailing or

residence address that occurs while any portion of the

restitution remains unpaid.  I'm not imposing a fine in light

of the other financial penalties that I am imposing.  And I'm

also, as I said earlier, directing forfeiture in the amount of

$2,929,411.

        Does either lawyer know of any legal reason why the

sentence I'm described should not be imposed?

        MS ATTIAS:  No, Judge.

        MR. COLLINS:  No, your Honor.

        THE COURT:  All right.  Then the sentence I've

described is the sentence I impose.  That's the sentence I find

sufficient but not greater than necessary to serve the purposes

of sentencing.

        Mr. Bartok, usually at this point in the sentencing I

give the defendant a little pep talk about finding something in

Daaibars ag                    Sentence

1    the long period of time that he or she will be serving that is

2    meaningful and can make your life not a complete waste.

3    Sometimes I'm talking to 20 year old gang bangers when I give

4    that speech, and I actually have more confidence in their

5    ability to do that than I do in yours.  But I nevertheless hope

6    that you can find something honest that you can do in prison

7    that will be rewarding to you, like work at a legit job, or

8    teach other inmates to read, something that can begin to make

9    up for what you've done.  You are an expert at convincing

10   yourself that everyone is being unfair to you and you didn't do

11   anything wrong and you don't understand what the problem is.

12   And now you're going to have a long time to think about it and

13   to stop BSing yourself and to face the facts that everything

14   that's coming down on you now is a result of your choice to be

15   a scam artist.  I hope you enjoyed it while it lasted, because

16   it's probably the last fun you're going to be having.  And

17   maybe some day, I doubt it, but maybe some day you'll recognize

18   how awful what you did to all those people was.  But like I

19   said, time will tell.

20          You have the right to appeal your conviction and

21   sentence, Mr. Bartok.  If you want to appeal and you're unable

22   to pay the cost of an appeal you can apply for permission to

23   appeal without paying.  Any notice of appeal must be filed

24   within 14 days of the entry of the judgment of conviction and

25   Ms Attias will assist you with that.  I do think you should

Daaibars ag                    Sentence

1    have new counsel on appeal, but I don't know that I effect

2    that.  I think that has to be done through an application to

3    the Circuit.

4              THE DEFENDANT:  Could you get Ms Attias to file the

5    appeal or your clerk?

6              THE COURT:  Ms Attias will file the notice of appeal

7    for you.  In all other respects she is relieved except she will

8    take whatever steps are necessary to make sure that the Circuit

9    assigns new counsel.  If I'm wrong about that, I'm happy to do

10   it.  But I've never, I don't think I can appointment somebody

11   off the Circuit panel.

12             MS ATTIAS:  I'll look into that, Judge.  I'll make

13   some phone calls today.

14             THE COURT:  All right.  Let me ask the government as

15   to its intentions with counts 8 and 10.  Are you going to be

16   asking me to dismiss them?

17             MR. COLLINS:  We're moving to dismiss Counts 8 and 10

18   of the S4 indictments and also the underlying indictments.

19             THE COURT:  Counts 8 and 10 of the S4 and the

20   underlying indictments are dismissed.  There is one more thing

21   I want to say --

22             MR. COLLINS:  As to Mr. Bartok, obviously.

23             THE COURT:  Yes.  There's one more thing I want to say

24   which has to do with the bankruptcy court and the important

25   work that's done over there and the impression that some

Daaibars ag                    Sentence

1    people, certainly Mr. Bartok may have about how that's not

2    really a court or something or doesn't really count or you can

3    lie.  I hope this conviction sends the message there are very

4    severe consequences for manipulating the bankruptcy system and

5    it is a wonderful thing in this country that people who for no

6    fault of their own get into a financial jam have a way to get

7    out of it.  And it's people like Mr. Bartok who bring that

8    whole system into disrepute.  But it works in this case because

9    the appropriate authorities were able to bring Mr. Bartok's

10   crimes to the prosecutors and at least Mr. Bartok's

11   manipulation of the system has stopped.

12        I don't know if anybody will take notice of

13   Mr. Bartok's sentencing but I hope they will and I hope some of

14   them are people who will think twice before making false

15   filings or committing other frauds in connection with the

16   bankruptcy process.  Is there anything else we should do now?

17        MS ATTIAS:  Your Honor, although he declined to make a

18   statement before, Mr. Bartok has asked you whether or not he

19   can make a statement now.

20        THE COURT:  No.

21        All right.  We are adjourned.  Thank you.

22        (Record closed)

23

24

25