# 15CV5698

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
[White Plains Division]

ANDREW BARTOK

     Defendant-Petitioner,

V.

UNITED STATES OF AMERICA

     Plaintiff-Respondent.

CRIM. NO. 7:10-CR-510-CS
Hon. Cathy Seibel

**MOTION TO VACATE, SET ASIDE[1]
OR CORRECT SENTENCE PURSUANT
TO 28 U.S.C. §§2255**

NOW COMES, Andrew Bartok (hereinafter, "The Petitioner") and respectfully moves the District Court for an <u>Order</u> to vacate, set aside or correct his sentence pursuant to 28 U.S.C. §§2255, asserting that the United States of America lacked standing to prosecute the case having neglected to present the matter to a duly constituted grand jury <u>and</u> pretrial (appellate counsel) was ineffective for failing to argue this <u>and</u> other cognizable claims to the District (Appellate) Court(s). To this end, the Petitioner was subject to a miscarriage of justice <u>or</u> omission inconsistent with the rudimentary demands of fair procedure. <u>Reed v. Farley</u>, 512 U.S. 339, 348, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994).

## 28 U.S.C. §§2255 STANDARD

A prisoner in custody under sentence of a court established by an Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the District Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the

---

[1] Pro se submission - to be read liberally
Adjudication during pendency of direct-appeal requested!

maximum authorized by law, or is otherwise subject to collateral attack, may move the court, which imposed the sentence to vacate, set aside or correct the sentence. 28 U.S.C. §§2255(a)

For the purpose of §§2255, the term **sentence** refers to both the sentence and underlying conviction. see <u>Johnson v. United States</u>, 623 F.3d 41 (2d Cir. 2010)(noting the sentence in §§2255(a) is understood to encompass both the conviction and sentence). <u>Id</u>.

Rule 4(b) of the <u>Rules Governing Section 2255 Proceedings</u> for the United States District Court, provides that "[I]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party."

Conversely, unless the motion, the filings and the records of the case conclusively show that the prisoner <u>is</u> entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. 28 U.S.C. §§2255(b)

The threshold the Petitioner must meet to obtain an evidentiary hearing is considered to be reasonably low. <u>United States v. Booth</u>, 432 F.3d 542, 545-46 (3d Cir. 2005).

The Supreme Court has held that non-jurisdictional <u>and</u> non-constitutional claims are cognizable under section 2255 only if they reveal a fundamental defect which inherently results in a complete miscarriage of justice or omission inconsistent with the rudimentary demands of fair procedure. <u>United States v. Addonizio</u>, 442 U.S. 178, 185-86, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).

## FACTS AND PROCEEDINGS
## RELEVANT TO DISPOSITION OF THE INSTANT §§2255 MOTION

In 2010, a Complaint was filed by the United States Attorney for the Southern District of New York, alleging that Mr. Bartok committed bankruptcy fraud and other felonies. [Dkt. #1] The Petitioner retained counsel, pled not guilty, and was freed on a $200,000.00 bond. [Dkt. #6]

A grand jury seated in the Southern District of New York handed down an Indictment and several superseding Indictments which expanded upon the allegations set forth in the original Complaint.[2]

In August 2011, the District Court revoked Petitioner's bond pursuant to 18 U.S.C. §§3148(b). Petitioner appealed the revocation <u>and</u> while thaat appeal was pending handed down a fourth superseding indictment.

In March 2012, the Second Circuit Court of Appeals affirmed the District Court's revocation of Petitioner's Bond in an unpublished disposition, concluding that the Petitioner committed perjury during the proceedings, and found that Petitioner had not rebutted 18 U.S.C. §§3148(b)'s presumption of dangerousness.

Mr. Bartok was tried by a jury <u>and</u> after a nearly three-week trial, on October 24, 2012, the jury found Petitioner guilty of attempt and conspiracy to commit mail fraud (Count One); frauds and swindles (Count Two); conspiracy to defraud the United States (Count Three); bankruptcy fraud (Count Four); tampering with a witness, victim, or informant (Count Five); making false statements or entries (Count Six); and destruction, alteration, or falsification of records in federal investigations (Count Seven).

In October 9, 2013, the District Court sentenced Mr. Bartok to a total of 288 months imprisonment, the Petitioner was remanded to the Bureau of Prisons and is currently incarcerated at FCI Loretto.

2 Petitioner challenges the authenticity of those "indictments."

Mr. Bartok filed a timely Notice of Appeal and with the assistance of counsel currently pursues direct of appeal of his conviction and sentence. Additionally, on July 28, 2014, the Petitioner filed with the Appeals Court a motion seeking bond pending appeal.

Although, on August 4, 2014 the Petitioner filed a pro se writ of habeas corpus pursuant to 28 U.S.C. §§2241 with the District Court at the Western District of Pennsylvania, this §§2255 Motion supplants that filing, as it was the result of misinformation given the Petitioner.

The Magistrate Judge handling the "writ of habeas corpus" after having reviewed it, issued a Report And Recommendation, recommending that the petition be denied for lack of jurisdiction pursuant to 28 U.S.C. §§2255(e), alternately found that even if §§2255(e) did not apply, there was no reason for it to consider [Mr. Bartok's] collateral attack while his direct appeal was pending in the Second Circuit Court of Appeals.

This Report And Recommendation was adopted by the District Court on August 28, 2014 and although the Petitioner filed an appeal of the Order, the expectation is that Petitioner was be more appropriately served via 28 U.S.C. §§2255, thus the instant motion.

## Adjudication During Pendency Of Direct Appeal

Pursuant to United States v. Outen, 286 F.3d 622, 632 (2d Cir. 2002), Mr. Bartok respectfully requests consideration of [these] claims during the pendency of his direct appeal before the Second Circuit Appeals Court. see §§2255 Proceedings For The United States District Court, Rule 5, Advisory Committee Notes (1976 adoption)("There is no requirement that the movant exhaust his remedies prior to seeking relief under §§2255").

## GROUND ONE

I. MR. BARTOK RECEIVED INEFFECTIVE COUNSEL WHEN COUNSEL NEGLECTED TO CHALLENGE IN THE PRETRIAL PHASE AND DIRCET APPEAL THE GOVERNMENT'S LACK OF STANDING TO PROSECUTE HIM

## 1. Ineffective Assistance Standard

As it pertains to ineffective assistance of counsel in general, the Supreme Court has set forth a two-prong test for determining whether a defendant's claims of ineffective counsel warrants the reversal of his conviction. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. Id. Second, the defendant must show that the deficient performance prejudiced the defendant. Id.

To satisfy the performance prong, the defendant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.

With respect to the prejudice prong, the defendant must demonstrate that counsel's errors were so serious as to deprive the defendant of a fair trial whose results is reliable. Id. at 687. However, if counsel's errors have no effect on the judgment, the conviction should not be reversed. see Id. at 691.

Per se prejudice occurs if there has been a constructive denial of counsel. This happens when a lawyer entirely fails to subject the prosecutions case to meaningful adversarial testing, thus making the adversary process itself presumptively unreliable. Powell v. Alabama, 287 U.S. 45, 77 L.Ed 158, 53 S.Ct. 55 (1932).

A defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. Defense counsel has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary. Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(quoting Strickland, 466 at 690).

5.

At <u>Hemstreet v. Greiner</u>, 367 F.3d 135 (2d Cir. 2003), the Second Circuit Appeals Court held that a "habeas petitioner can show ineffective assistance of appellate counsel if he demonstrate that, on appeal, 'counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" <u>Jackson v. Leonardo</u>, 162 F.3d 81 (2d Cir. 1998). That no tactical decision can justify failure to raise the issue on direct appeal.

### 2. Standing In Federal Prosecutions

As this Court is aware, Article III of the U.S. Constitution confines the federal courts to adjudicating actual cases and controversies. <u>Allen v. Wright</u>, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). And, the requirement that **Plaintiffs** have standing to bring a case entails both constitutional and prudential limitations on the exercise of federal jurisdiction. Article III requires that, at a minimum, as it pertains to federal prosecutions for felony offenses, the plaintiff's case demonstrate the following showing:

1. That, Fifth Amendment requires federal government to use grand jury to initiate prosecution [for felony offenses]. <u>Campbell v. Louisiana</u>, supra (1998). As grand jury proceedings are constitutionally mandated for institution of federal criminal prosecutions for capital or other serious crimes. <u>Branzburg v. Hayes</u>, supra (1972).

2. Under the Fifth Amendment and Rule 6 Fed. R. Crim. P., indictment is valid if (1) grand jury returning indictment consisted of between 16-23 jurors, (2) every grand jury session is attended by at least 16 jurors, and (3) at least 12 jurors vote to indict. <u>United States v. Leverage Funding Systems, Inc.</u>, 637 F.2d 645 (9th Cir. 1980), cert. denied 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981).

3. Rights Retained By Every Accused

An essential principle of due process is that a deprivation of life,

6.

liberty, or property be preceded by **notice** and **opportunity for hearing** appropriate to the nature of the case. <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

In the context of grand jury proceedings, pursuant to <u>25 **ALR** Fed. 723</u> "an accused has a right to have the Federal Grand Jury make written record of its proceedings" and pursuant to <u>3 **ALR** Fed. 29</u> "an accused has a right to inspection of minutes of Federal Grand Jury."

**A. No Grand Jury Found Indictment Was Returned Against Mr. Bartok**

Consistent with the three core concerns in any federal prosecution, as they relate to defendants' due process rights, including his rights under the Sixth Amendment to the U.S. Constitution to effective assistance of counsel, the standing of plaintiff - United States of America <u>and</u> rights retained by every accused [in defense of federal charges], the Petitioner's principle claim is that <u>no</u> grand jury found indictment was returned against him as demonstrated by the face of his alleged indictment <u>and</u> the docket entries of his case.

In making this claim, Petitioner, first point to Second Circuit Court of Appeals' dicta at <u>United States v. Rutkoske</u>, 506 F.3d 170, 175 (2d Cir. 2007), wherein they, in footnote 2, reference <u>United States v. Thompson</u>, 287 F.3d 1244, 1251 (10th Cir. 2002) for the proposition that "an indictment is found under 18 U.S.C. §§3282 when the grand jury votes to indict the defendant and the foreperson subscribes the indictment as a true bill." Indeed, pursuant a <u>Summary Order</u> at <u>United States v. Hershman</u>, 1995 U.S. App. LEXIS 39844 (2d Cir. 1995), the Second Circuit opined that "under Fed. R. Crim. P. 6(f) an indictment is 'found' upon agreement by <u>12</u> or more grand jurors", that there exist no "textual filing requirement" [within the statue].

As it pertains to "indictments" in federal cases, the Second Circuit looks to the requisite "agreement" of <u>12</u> or more grand jurors, not necessarily the charging instrument drafted by the government.

7.

Irregularities In Bartok's Indictment Procedure And Charging Instrument

First, as gleaned from Bartok's "Criminal Docket For case #: 7:10-CR-00510-CS-1" no "record of concurrence or voting record of the grand jury entered onto the docket under Rule 6(c) envincing any grand jury voted to indict him. see United States v. Mendoza, 698 F.3d 1303 (10th Cir. 2012), citing United States v. Alcantara, 396 F.3d 189, 200 (2d Cir. 2005) for the proposition, "entries on the docket should be made promptly.. we think this type of general notice suffices to afford an adequate opportunity for challenge." Considering, at In re Application of Herald Co., the Second Circuit Court of Appeals opined in regards to docket entries, "the motion itself may be filed under seal, when appropriate, by leave of court, but the publicly maintained docket entries should reflect the fact that the motion was filed."

In support of this claim, the Petitioner profer the docket sheet of criminal defendant Rashon Coston - docket 5:11-CR-272-NAM-1 (Northern District of New York), which demonstrate the proper and particular important entry of the grand jury voting record onto the public docket evincing the will of the grand jury in voting to indict, at 2:

"Minute Entry for Grand Jury proceedings held before Judge David Hurd: GRAND JURY makes a partial report and returns Indictment. Tally Sheet is ordered sealed..." [Exhibit A].

Whereas, in the case of Mr. Bartok, the public record or docket sheet shows, at 21:

"INDICTMENT FILED as to Andrew Bartok (1) count(s) 1. (jty)(Entered: 06/10/2010)"

At 23:

"(S1) SUPERSEDING INDICTMENT FILED as to Andrew Bartok (1) count(s) 1s, 2s, 3s, 4s, 5s, Kathleen Addario (2) count(s) 1, 3, 4, 5, (jty)

8.

Modified on 7/21/2010 (fk). (Entered: 07/21/2010)"

At 40:

"(S2) SUPERSEDING INDICTMENT FILED as to Andrew Bartok (1) count(s) 1ss, 2ss, 3ss, 4ss, 5ss, Kathleen Addario (2) count(s) 1s, 2s, 3s, 4s, 5s, Veronica Tobin (3) count(s) 1, 3, 4. (jty) (Additional attachments(s) added on 2/4/2011: #1 S2)(fk). (Entered: 2/01/2011)"

At 78:

"(S3) SUPERSEDING INDICTMENT FILED as to Andrew Bartok (1) counts(s) 1sss, 2sss, 3sss, 4sss, 5sss, 6sss, Kathleen Addario (2) count(s) 1ss, 3ss, 4ss, 5ss, Veronica Tobin (3) count(s) 1s, 3s, 4s. (jty)(Entered: 09/08/2011)"

At 110:

"(S4) SUPERSEDING INDICTMENT FILED as to Andrew Bartok (1) count(s) 1ssss, 2ssss, 3ssss, 4ssss, 5ssss, 6ssss, 7ssss, 8ssss, 9ssss, 10ssss. (jty)(Entered: 02/17/2012)"

Petitioner assert that inapposite Coston's docket, which show that a duly constituted grand jury made a "partial report and returns Indictment... [and the] Tally Sheet is ordered sealed", Mr. Bartok's public docket only demonstrate that an alleged indictment was "filed" on four occassions and entered by (jty) onto the docket. [Judicial Notice of Criminal Docket for Case #: 7:10-cr-00510-CS-1, requested].

This the Petitioner take-it demonstrates "irregularity" or at a minimum a lack of procedural due process. At Mangiafico v. Blumenthal, 471 F.3d 398 (2d Cir. 2006), the Second Circuit Appeals Court opined that "district courts permissibly looked to docket sheets in ruling on motion to dismiss because, docket sheets are public records of which the court could take judicial notice."

9.

Because the record maintained by the Clerk of the Court demonstrate that no grand jury voting record entered onto the docket [in a public], however, sealed fashion evincing the will of the grand jury to indict Mr. Bartok via use of **Form AO 190 (Rev. 01/09)** or "Record Of The Number Of Grand Jurors Concurring In An Indictment", which the United States District Court's website exhibits, providing on its face a place for the grand jury foreperson to affix his/her signature and date and because the records before this Court demonstrate government misconduct in this regard [as shall be further shown] and because Mr. Bartok did not receive fair notice [by the entry on the docket or grand jury vote] he was perjudiced by counsels' failure to argue this claim to the District Court or on appeal. see Freemen on Judgments §§49 (while entry is not judgment, its absence tends strongly to indicate that no judgment exist). see also, the Advisory Commitee Note to 1966 Amendment, reprinted in 39 F.R.D. 69, 200 (1966) addressed to this all important docketing requirement in saying, "the amendment was necessary to fix the precise time at which a judgment is entered... a publicly available entry ensures this purpose will be satisfied.. in contrast, defining entered on the criminal docket as including entries visible only to court staff sows confusion as to the precise date from which an appellate deadline runs." **[Exhibit B - Form AO 190 (Rev. 01/09)]**

Finally, Mr. Bartok is entitled to be satisfied that the indictment was in fact concurred in by twelve or more grand jurors and not merely a formal instrument signed only by the foreperson. United States v. Benigno, 1976 U.S. Dist. LEXIS 12871 (S.D.N.Y. Oct. 6, 1976), an adversary hearing is in order if such record [of concurrence] is not available. see United States v. Bullock, 448 F.2d 728 (5th Cir. 1971).

Second, Petitioner's diligent investigation of the form of his indictment and indictment procedure has uncovered observed forgery with respect to the authenticity of the United States Attorney's signature contained on his "alleged" indictment.

10.

Therefore, pursuant to Rule 201 Fed. Rules Evid, the Petitioner respectfully request that the Court take **Judicial Notice** of the following "rationally based opinion based on the perception of a lay person", who has personal knowledge of 5 instances, or exemplars of the United States Attorney's "John Hancock" [handwritten signature] on 4 alleged grand jury approved indictments in his case. see Gravely v. Providence Partnership, 549 F.2d 958 (4th Cir. 1977), 1 Fed. Rules Evid. Ser. 657.

On 6/9/2010 an "indictment" was filed in Crim. Case No. 7:10-Cr-00510-CS containing a signature for the alleged grand jury foreperson and the United States Attorney [Preet Bharara] for the S.D.N.Y. [Exhibit C] This "indictment" was superseded on 7/19/10 by document no. 23. [Exhibit D]

Thereafter, on "indictment" (S2) was filed with the Court on 1/31/11 demonstrating a different grand jury considered it and affixed [Their] signature, along with the signature for the U.S. Attorney [Preet Bharara]. [Exhibit E]. **To be followed by "indictment" (S3), filed with the Court on 9/7/11. [Exhibit F].** Then, (S4) on 2/15/2012.

Juxtaposed in comparison with those "indictments", the Petitioner profer the signature lines for the United States Attorney [Preet Bharara] onto the indictments for defendants: **1.** Walter Garcia, **2.** Roberto Martinez, **3.** Sheldon Silver, and **4.** Walter Garcia [different page]. [Ex. G]

Remarkable or Unremarkable, depending of the objectivity of the observer, the United States Attorney's signature [Preet Bharara] for Mr. Bartok's "indictments" filed with the Court on 6/9/10 and 7/19/10, show pronounced signs of divergences in signature. For example, the initial P, for Preet at Exhibit C shows noticiable difference from the initial P for Preet in Exhibit D, in that the P of Preet in D does not connect with the letter r that follows, such as in C, E, and F.

For example, the Preet Bharara at Walter Garcia, Roberto Martinez, Sheldon Silver and Walter Gracia [again] evince divergencies completely

11.

dissimilar to the Preet Bharara(s) in the "indictments" of Mr. Bartok, Exhibits C,D,E and F.

Owing to Petitioner's background in handling a voluminous number of documents, even in the business of bankruptcy related filings, he of the opinion the government attorney's signature was "forged" in instances where it was required to demonstrate the authenticity of the charging instrument and will of the United States Attorney [Preet Bharara]. see [see Rule 701 **Fed. Rules Evid.** - Opinion Testimony By Lay Person - Pet. Aff. at 3 ].

At <u>United States v. Cox</u>, 342 F.2d 167 (5th Cir. 1965), the Fifth Circuit Court of Appeals addressed this all important component of the charging process in federal prosecutions for felony offenses, and determined that the "John Hancock" signature for the United States Attorney [onto the indictment] was "necessary to the validity of the indictment and the affixing or withholding of his signature was a matter of exclusive executive discretion that could not be coerced..."

As a matter of fact, Rule 7(c) Fed. R. Crim. P. references this particular "sine quo non", with respect to the "finding" of an indictment, when it provides that "an indictment must be signed by an attorney for the government", effectively precluding federal grand juries from issuing an indictment without [the] prosecutor's signature, signifying his or her approval. see W. Lafave, J. Israel, N. King and O. Kerr, Criminal Procedure, §§ 15.1(d)(3d. Ed. 2007).

Wherefore, because Petitioner's alleged "indictment" demonstrate significant divergencies in signatures for the U.S. Attorney [Preet Bharara] to call into question whether Mr. Bharara actually endorsed the "indictments" personally <u>or</u> his signature was forged by someone else, without authorization or his knowledge, the Petitioner is entitled to an adversary proceeding and discovery on the issue of authencity of signature <u>and</u> the validity of his "alleged" indictments.

12.

In that Mr. Bartok has shown significant divergencies [forgery] in the signatures of the United States Attorney [Preet Bharara] and/or "irregularity" in his indictment procedure, demonstrative of a manifest injustice, he was prejudiced by pretrial counsels' [appellate counsel] failure to argue this constitutional violation of his Fifth Amendment right to the District [Appeals] Court, an evidentiary hearing appears to be in order to assess counsels' demeanor under oath and make findings of fact and conclusions of law.

## GROUND TWO

### II. MR. BARTOK RECEIVED INEFFECTIVE ASSISTANCE WHEN COUNSELS FAILED TO ARGUE ABOUT THE SPEEDY INDICTMENT VIOLATION IN HIS CASE

** Petitioner realleges his basis for ineffective assistance as set forth in Ground One and further says:

As shown by Mr. Bartok's docket summary in case no. 7:10-Cr-00510-CS-1, Bartok was arrested on 3/16/10 and arraigned on a Complaint, before Magistrate Judge Paul E. Davison the same day. [Dkt. #5]

In addition to setting the terms of Bartok's bond, which was set at $200,000 PRB, 1 FRB, $15,000 Secured Cash or Property, Magistrate Davison scheduled the case for a preliminary hearing for 4/14/10.

Appearing on behalf of Bartok, who had not either retained counsel or filed a "financial affidavit", at this juncture, was Federal Defender Amy Attias and on behalf of the government was Asst. U.S. Attorney Nicholas McQuaid. Neither of whom filed "Appearances" in the case. [Dkt. #5]

Mr. Bartok posted the requisite bond and was released with conditions that he "surrender all travel documents with applications - travel restrictions to the SDNY/EDNY and Dist. of New Jersey" and an Order of

the Court "Setting Conditions of Release." [Dkt. #8]

April 14, 2010, the date set for Mr. Bartok's preliminary hearing came and passed without any hearing taking place. However, Magistrate Judge Davison [for reasons not set forth in the record] enters an "Order to Continue In the Interest Of Justice", excluding the time from 4/14/10 - 5/12/10 from the speedy trial clock. No seperate Order was entered into record by the Court.[Dkt. #13]

Remarkably, on 5/12/10, Asst. U.S. Attorney Nicholas L. McQuaid [sic], [alleging to be representing Mr. Bartok's wishes], requests an "extension of time" in the interest of justice. McQuaid's request did not set forth a requested date for continuation of the case. [Dkt. #17]

Despite apparent deficiencies in McQuaid's request for an "extension of time", the Magistrate Judge enters an Order on 5/12/10 continuing the case to no certain date. Nevertheless, excluding 5/12/10 - 6/9/10 [allegedly from the speedy trial clock]. [Dkt. #17]

On 6/9/10 Asst. U.S. Attorney John P. Collins repeats the same "Affirmation" as did Asst. U.S. Attorney McQuaid, allegedly on behalf of Mr. Bartok seeking an "extension of time" and a fortiori, Magistrate Judge George A. Yanthis enters an "Order To Continue In The Interest Of Justice as to Andrew Bartok", excluding 6/9/10 - 6/16/10 [for resaons not shown on the record]. [Dkt. #18] [Pet. Aff. at 4 ]

On 06/09/2010 a first "Indictment" is filed as to Andrew Bartok containing one count, mimicking the language of the Complain against him. [Dkt. #21]

Thereafter, on 7/19/10 an "(S1) Superseding Indictment" is filed as to Andrew Bartok, then on (S2) on 1/31/2011, (S3) on 9/7/2011 and (S4) on 2/15/2012. [Dkt. Summary]

C. Mr. Bartok Was Not Indicted Within 30 days Of His Arrest

14.

At United States v. Gaskin, 364 F.3d 438 (2d Cir. 2004), the Second Circuit set forth the applicable statutory framework [ precedent in the Second Circuit] for evaluation of "speedy indictments" claims under 18 U.S.C. §§3161(b) and §§3162(a)(1).

Opining that "the adminsitration of justice depends heavily upon prompt processing of criminal proceedings, both to safeguard the rights of the accused and to promote public respect for and confidence in the law." United States v. Hillegas, 578 F.2d 453, 456 (2d Cir. 1978); accord United States v. Breen, 243 F.3d 591, 594 (2d Cir. 2001). Toward this goal, Congress enacted the Speedy trial Act of 1974, 18 U.S.C. §§3161 et seg., which provides for dismissal of charges against a defendant who is not indicted, arraigned, or brought to trial within periods of time set forth in the statute. Id.

"Any information or indictment charging an individual with the commission of an offense shall be filed within **thirty days** from the date on which such individual was arrested or served with a summons in connection with such charges." Id. §§ 3161(b). The sanctions for a violation of 3161(b) is set forth in §§3162(a)(1): "if, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time required by section 3161(b)..., such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." Id. §§3162(a)(1). A §§3162(a)(1) dismissal may be "with or without prejudice" depending upon the seriousness of the offense, the circumstances leading to dismissal, the impact of reprosecution on the Speedy Trial Act and the administration of justice, id., as well as whether the defendant sustained any prejudice, see United States v. Taylor, 487 U.S. 326, 332-34, 101 L.Ed.2d 297, 108 S.Ct. 2413 (1988).

Because, the record before the District Court shows that Mr. Bartok was not properly indicted, or "within 30 days of his arrest" his indictment filed with the Court on 6/9/2010 should be dismissed.

D. **Dismissal Pursuant To** United States v. Rivera, **25 F.Supp.2d 167 (S.D.N.Y. Oct. 21, 1988) Appears To Be In Order**

With respect to Rivera, the salient facts are as follows:

"The defendant's brother was arrested as part of a drug sting. Learning the error, the agents released the brother. The government waited until the defendant's term in the United States Army Reserves was over before arresting him. The defendant was arraigned before a magistrate judge and was assigned counsel, who agreed to a one-month continuance after conferring with an assistant United States Attorney (AUSA) to allow the defendant to consider participating in another investigation. Yhe AUSA obtained repeated continuances based on his untruthful assertions that he had obtained consent from the defendant's counsel. The defendant filed a motion to dismiss the indictment with prejudice on the grounds that the government has failed to comply with the speedy trial provsions of the U.S. Const. Amend. VI and 18 U.S.C. §§3161(b) and §§3161(a)(1). The court granted the motion and dismissed the matter with prejudice. The court held that while the defendant failed to make a showing of bad faith on the government's behalf, the government's handling of the cause evidenced, at best, a demonstrably lackadaisical attitude."

Bartok's speedy trial violation appears   more than sufficiently similar to warrant dismissal. The time delay between Bartok's arrest on 3/16/10 and his alleged indictment on 6/9/10 evince a demonstrated delay of more than 30 days. Moreover, approximately 83 days. Which, as this Court is aware mandates dismissal of the "indictment" against Mr. Bartok. see 18 U.S.C. §§3162(a)(1).

Recognizing their "lackadaisical attitude" [approach] and pronounced tardiness, **two** government attorney file with the District Court [bogus] Affirmations on behalf of Mr. Bartok affirming [apparently] his concurring in an extension of time in which to indict him. As shown by Bartok's herein referenced "Personal Affidavit" he did not accent or agree to any "extension of time." Rather, AUSAs McQuaid and Collins, Jr. "perpetrated fraud upon the court" in posit  false affirmations about Mr. Bartok's agreeing to any "extension of time." [Pet. Aff. at 4 ].

**No Ends Of Justice Findings Were Made**

As this Court is aware, "ends of justice" exclusions were included by Congress in formulation of 18 U.S.C. §§3161 in recognition of the fact that courts need some discretion to deal with otherwise unavoidable delays associated with indictments and trial process. To this end, "ends of justice" exclusions are not meant to be general exclusions for every delay no matter the source. Rather, should be based on specific underlying factual circumstances. Extension(s) are proper only if ordered for specific periods of time and justified on the record with reference to enumerated factors. <u>United States v. Pollock</u>, 726 F.2d 1456 (9th cir. 1984).

Trial Judges are obligated to seriously weigh benefits of granting [a] continuance against strong public and private interests served by speedy trials and may put their findings on the record. <u>United States v. Bryant</u>, 523 F.3d 349 (App. D.C. 2008).

Turning to the case at bar, the record before this Court show that [for no apparent reason shown on the record] Magistrate Judge <u>arbitrarily</u> extended the time wherein which the government could obtain an indictment against Mr. Bartok. **[Dkt. 13]** However, at no time does the record show that the Magistrate "weigh[ed] the benefits of granting a continuance against strong public and private interest." As such, this 4/14/10 continuance by the Magistrate Judge Davison <u>did</u> not exclude any time from the speedy trial clock <u>and</u> the governments' initial "perpetration of fraud upon the court" via its clairvoyant "Affirmation of Nicholas L. McQuaid by Andrew Bartok" doesn't appear to save the day in the face of §§3162(a)(1)'s sanction for failing to indict within <u>30</u> days of arrest.

Nor, would it appear, the <u>two</u> erroneously granted "Affirmations."

Consequently, Mr. Bartok was prejudiced by pretrial counsels' failure to argue this point to the District Court <u>and</u> on direct-appeal.

## Dismissal With Or Without Prejudice

Because there appears to be no dispute that the government filed an untimely "indictment", the Court can then turn its attention to whether this dismissal is with or without prejudice to re-indictment, consider the government continued to supersede on at least (3) occassions, although the allegations in those "superseding" indictments were required to joined by those alleagtions in the original indictment. see United States v. Novak, 715 F.2d 810 (3d Cir. 1983), cert. denied 465 U.S. 1030, 104 S.Ct. 12913, 79 L.Ed.2d 694 (1984).

As it pertains to dismissal with or without prejudice, the Second Circuit Appeals Court provides a framework citing to Supreme Court precedent at United States v. Taylor, 487 U.S. 326, 335, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988), asserting that dismissal with or without prejudice is left to the sound discretion of the District Court. Id.

In considering the three statutory factors set forth in 18 U.S.C. §§3162(a)(1), the Taylor Court command the District Court look to: 1. the seriousness of the offense; 2. the circumstances leading to dismissal; and 3. the impact od reprosecution on the administration of both the speedy trial act and justice.

## Seriousness

Initially, Mr. Bartok was charged via a Complaint filed with the District Court on 3/12/2010 (including Kathleen Addario) with violation of 18 U.S.C. §§1341 (Mail Fraud)(Bankruptcy Fraud). These allegations due to the governments' repeat "bites at the apple" morphed into allegations of 1. conspiracy to commit bankruptcy fraud, 2. conspiracy to commit mail and wire fraud, 3. conspiracy to commit obstruction of justice and 4. obstruction of justice, violations of 18 U.S.C. §§371, §§1001, §§1349, §§1512(k), and §§1519 respectively.

Ultimately, Mr. Bartok was found guilty of all counts contained in

18.

the (S4) indictment, except for counts 8 and 10 which were dismissed with all other chrages in the first, second and third indictments.

In a posttrial <u>Motion</u> <u>To</u> <u>Set</u> <u>Aside</u> <u>Verdict</u>, Petitioner's counsel (Attorney Florio) argues that [he] was not shown to have intent to defraud <u>and</u> that cooperating witnesses <u>didn't</u> testify that the Petitioner intended to defraud <u>and</u> that he did help customers delay their foreclosures, although perhaps through "stretching the bankruptcy code. In essence, counsel's arguments in an attempt to set aside the verdict were that the Court should have "charged the jury on §§1001(b), which exempts parties and counsel from §§1001(a) of Title 18 which forbids false statements in a judicial matter."

The governments' response appears to reinforce counsel's posttrial claims, to the extent the government points out that "Mr. Bartok held himself out as a foreclosure expert and claimed to know about 'legal loopholes'....."

While, Petitioner's convictions carried a substantial amount of potential time, his initial charge in his first indictment alleged only violation of 18 U.S.C. §§1341 (Frauds and Swindles), and carried "a fine or imprisonment not more than 20 years, or both."

### The Circumstances Leading To Dismissal

The docket sheet <u>and</u> evidence before this Court shows that, 1. much the same as was the case in <u>United States v. Rivera</u>, 25 F.Supp.2d 167 (S.D.N.Y. Oct. 21, 1998), the government demonstrated a particular "lackadaisical attitude" in handling Bartok's case. When the <u>30</u> deadline for returning an indictment approached and pass, <u>two</u> government attorney posited <u>bogus</u> "Affirmation" allegedly on behalf of Mr. Bartok (without his permission or accent), requesting extensions of time to return the indictment.

Their actions were not only reprehensible and untrue, but

two seperate Magistrate Judges took the "bait" and granted extensions of time for the government to posit alleged grand jury approved indictment, which although the record demonstrate that they were not returned by any grand jury, Bartok was prosecuted nonetheless.

Notably, in the Rivera case the defendant was arraigned before a magistrate judge and was assigned counsel, who agreed to a one-month continuation after conferring with an Assistant United States Attorney (AUSA) to allow the defndant to consider participating in another investigation. [Then] the AUSA ontained repeated continuances based on his untruthful assertions that he had obtained consent from the defendant's counsel.

In Bartok's case, he was not appointed any counsel at his initial appearance before Magistrate Davison on 3/16/10, rather Federal Defender Attias was there (· no filing of appearance) as an "overseer" "for presentment of Defendant only." A preliminary hearing date of 4/14/10 was set by the Court and when that date passed and the 30 days in which to indictment Mr. Bartok pursuant to 18 U.S.C. §§1361, the Magistrate entered an invalid "Order To Continue In The Interest Of Justice" which did not alleged that it "outweighed the best interests of the public and the defendant in a speedy trial" and explained how under 18 U.S.C. §§3161(h)(8)(A). Thereafter, two Assistant U.S. Attorney "perpetrate fraud upon the court" by asserting that they were acting on behalf of Andrew Bartok in requesting extensions of time, when the indictment "they" returned contained only language that "gilded" the same language in the preceding Complaint, violation of 18 U.S.C. §§1371 (Mail Fraud).

The Impact Of Reprosecution

Pursuant to United States v. Taylor, supra (1988), the U.S. Supreme Court stated:

"It is self-evident thsat dismissal with prejudice always sends a stronger

20.

message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays."

As such, in the case of United States v. Andrew Bartok, 7:10-Cr-510 -CS the factors appear to weigh favorably toward "dismissing" the "indictment" filed on 6/9/2010 with prejudice in they are the same allegations and charge shown in the Complaint filed with the Court on 3/12/10, or violation of 18 U.S.C. §§1371 (Fraud and Swindle).

To this end, the charges of which Bartok was found guilty at trial, contained in the (S4) indictment should also be dismissed as they were required to be joined with those contained in [Bartok's] original indictment. see e.g. United States v. Novak, 715 F.2d 810 (3d Cir. 1983) cert. denied 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984); see also, United States v. Vo, 413 F.3d 1010 (9th Cir. 2005).

## Prejudice

The Petitioner asserts that prejudice is shown because he has a valid violation of 18 U.S.C. §§1361(b). Second, the delay almost triple the time provided under §§1361 and resulted in the governments' need to perpetrate fraud to initate Mr. Bartok's prosecution. Third, Mr. Bartok incurred challenges to his health and will undoubtedly play-out as he advances in age. Fourth, his equal protection rights were violated, as he was treated dissimilar to similarly situated defendants who did not have to mount a defense under such circumstances, including circumstances where he had to repeated defend himself in the face of disagreement with counsels.

Wherefore, the Petitioner circumstance more than appears to warrant an evidentiary hearing to ferret-out and unearth the extent of the government misconduct in failing to adhere to §§1361 and his resulting prosecution.

21.

III. BECAUSE OF INEFFECTIVE COUNSEL MR. BARTOK WAS SUBJECTED TO AN UNREASONABLE SENTENCE

As this Court is aware, a sentence is procedurally unreasonable if the District Court committed a "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the 18 U.S.C. §§3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007); United States v. Legros, 529 F.3d 470, 473-74 (2d Cir. 2008).

Where a defendant challenges factual allegations in a presentence report, the sentencing court "must either make a finding concerning the objection or [make] a determination that such a finding is unnecessary because the matter controverted will not be taken into account in sentencing." United States v. Ursillo, 786 F.2d 66, 68-69 (2d Cir. 1986)(citing Fed. R. Crim. P. 32(c)(3)(D)(i) & (ii))see also, United States v. Macklin, 927 F.2d 1272, 1281 (2d Cir. 1991); United States v. Shoulberg, 895 F.2d 882 (2d Cir. 1990).

In the case of Andrew Bartok a presentence report was ordered by the Court and sentencing hearing(s) were conducted on 10/9/13 - 10/10/13. Mr. Bartok was represented by Attorney Attias at these hearings. Attias did not actual file with the Court any actual objections to that presentence report. The transcript of the second day of the hearing on 10/10/13 show that Mr. Bartok and Ms. Attias were in disagreement as to how to proceed. Matter of fact, Bartok commented at the 10/10/13 hearing that:

THE DEFENDANT: "I'm having a hard time talking to her because she's shutting me down every three minutes."

The District Court questioned Attias about her willingness to proceed with the sentencing hearing despite the disagreement with her

client, Mr. Bartok:

THE COURT: "All right. Ms. Attias, I know you read the presentence report and the addendum and gone over it with your client, but can you confirm that for me for the record." [Dkt. #193- Sent. Trans. at 5]

MS ATTIAS: "Yes, Judge. We now finished in the courtroom going through the last few paragraphs that he wanted to point out to me." [Sent. Trans. at 5]

THE COURT: "All right." [Sent. Trans. at 6]

MS ATTIAS: "Despite your remarks a few minutes ago mentioning that many of his objections to the presentence report were not apropos I would like to include those just so the record is complete. At paragraph 76 it indicates, and that's at page 18, that in 1993 after being convicted of bad check, basically, he was sentenced to five years imprisonment and that sevrval months later that was converted to 18 months of intensive supervision which he completed."

THE COURT: "Does the government have any information to the contrary?"

MR. COLLINS: "I don't -- the only information I have, your Honor, is what's contained in the presentence report. If we had known about this obviously we could have talked to the probation officer to try to find whatever documents she has. Obviously, that has the potential of reducing the criminal history. Because if he's saying that it's months --"

THE COURT: "He says it was converted to 18 months. I don't know if the rest of it was parole or probation, but if the sentence ended -- let me look at the guidelines."

23.

MS. ATTIAS: "I just want to be clear that I have not confirmed that, of course. And he is informing me that he actually spent four months in jail before it was converted. So I don't know if it was converted or if he did four months of the five years and the rest was on probation." [Sent. Trans. at 6-7]

.. MR. COLLINS: I'm not sure that it would. It obviously would reduce the criminal history points. If Mr. Bartok is saying that he spent four months in prison that would reduce the points from three to two. However, two points would still be Category II and it would still be two points because it's a misdemeanor conviction that occurred within ten years of the commencement of the offense which is charged in Count 1, which is 2000."

THE COURT: "Then I will add to paragraph 77 the follwing. Well, I'll do this. i'll add to paragraph 76 five years imprisonment converted to four months imprisonment and 18 months intensive supervision, and we'll call it a two-pointer. I don't think it will make any difference to anybody. Five years does seem like a lot for that offense, but of course, it was the fourth fraud count."

MR. COLLINS: "Do we have to amend paragraph 78 as well, your Honor?" [Sent. Trans. at 7]

THE COURT: "Yes. Then it would change the total of the criminal history points to two criminal history points, Criminal History Category III. All right. What's next, Ms. Attias?"

...THE COURT: ..."The information regarding other arrests is appropriate in a presentence report. The Sentencing Guidelines and the statute and the Supreme Court have said there is really no limit on what the sentencing judge can consider in connection with sentencing. So there's nothing wrong with including it in the report. However, I'm not going to take any dismissed charges into account anyway, because there's no proof that Mr. Bartok did the

24.

things he was charged with. I'm not going to strike them from the report, but I'm not going to take them into account either."

...THE COURT: "All right. Then the findings of fact in the presentence report are my findings of fact. Does the government wish to be heard?"

MR. COLLINS: "Your Honor, we've already submitted two sentencing submissions, so unless there's anything else you'd like to hear from the government, we'll rest on our memoranda."

Finally, after some wrangling with respect to forfeiture, the Court finds Mr. Bartok's Criminal History Category to be Level II and his Offense Level to be 43.

However, counsel's deficient performance and the government's failure to prove by a perponderance of the evidence the criminal history enhancement in particular means Mr. Bartok's sentence is procedurally unreasonable.

First, the Petitioner assert that he did not receive effective counsel at the sentencing hearing. Attorney Attias's own statements to the Court show that she was unprepared for the sentencing hearing and despite having requested of the Court "an extension of several days, until September 18, 2013, to make my sentencing submission", September 18, 2013 came and passed and [She] did not make any sentencing recommendation or submission that entered onto the docket. As such the Defendant, Mr. Bartok was left to fend for himself at the sentencing, which is exactly what he was scrambling to do. [Dkt. 181]

Second, Ms. Attias , in her own words at sentencing stated that, "I just want to be clear that I have not confirmed that, of course" as it pertained to the criminal history enhancement for a "bad check." Indeed, the transcript of 10/10/13 at 5-7 show she had spent no time investigating any of the allegations in the presentence report, thus

her adoption of Mr. Bartok's uncounseled objjections at sentencing. As such, the Petitioner argues that he was "constructively" denied counsel at a critical phase of the proceedings, thus making the adversary process presumptively unreliable. Powell v. Alabama, 287 U.S. 45, 77 L.Ed 158, 53 S.Ct. 55 (1932).

Third, the government did not meet its burden of proof with respect to any prior conviction for Mr. Bartok, as they produce no certified copy of any prior conviction. see United States v. Campos-Rodriquez, 475 Fed. Appx. 367 (2d Cir. 2012)(the government, for sentencing purposes it not obligated to provide a certified copy of prior conviction absent denial of the conviction).

The record before this Court shows that when Mr. Bartok contested the factual contentions in the presentence report about any bad check conviction, said presentence report was adopted by the District Court, the government stated:

"MR. COLLINS: "I don't -- the only information I have, your Honor, is what's contained in the presentence report.."

Fourth, the District Court impermissively allowed prior arrest not resulting in a conviction to influence Mr. Bartok's sentence. see United States v. Juwa, 508 F.3d 694, 701 (2d Cir. 2007)(identifying procedural error in sentence enhancement based on unsubstantiated charges in indictment). The record show that the District Court identified 4 alleged prior fraud related allegations against Mr, Bartok. However, the government proferred no certified court record or any record to substantiate by a preponderance of the evidence any conviction, when the burdem of proof rested squarely with them. As the Second Circuit has previously determined at United States v. Vario, 484 F.2d 1052 (2d Cir. 1973), "the proper way to introduce evidence of a prior conviction is to produce [the] judgment of conviction signed

26.

by the sentencing judge <u>or</u> a transcript of the relevant proceedings."

Because Mr. Bartok was saddled with an <u>unprepared</u> counsel, whi failed to file a "sentencing submission", or file in advance of sentencing any <u>Objections</u> to information contained in the presentence report <u>and</u> because "statements of counsel are not evidence", as it relates to the government meeting its burden of proof, he has endured an unreasonable sentence and appears entitled to be re-sentence. If for example counsel investigated the case law, she would have known that the government was required to come forward with more than just statements as evidence for any of the enhancements Mr. Bartok was subjected to. see <u>United States v. Arboleda</u>, 20 F.3d 58, 61 (2d Cir. 1994)(for the proposition, "statements of counsel are not evidence).

## Conclusion:

Mr. Bartok respectfully move the Court to issue an <u>Order To Show Cause</u> directed at the U.S. Attorney for the Southern District of New York demontrating in any response that he is not entitled to relief, as the record demonstrate "fraud upon the court", amongst other constitutional violations of rights he retains as a United States Citizen.

I hereby certify under 28 U.S.C. §§1746 and the laws of the United States that the foregoing is true and correct.    Executed ⁷/6 /2015.

The Petitioner,

Andrew Bartok
Reg. No. 85300-054
FCI Loretto
P.O. Box 1000
Loretto, Pennsylvania 15940

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
[White Plains Division]

ANDREW BARTOK                     •          CRIM. NO. 7:10-CR-510-CS
    Defendant-Petitioner         •          Hon. Cathy Seibel

                            •

V.                                •

                            •

UNITED STATES OF AMERICA           •
    Plaintiff-Respondent.  •

## ADDENDUM - §§2255 MOTION

Petitioner, Andrew Bartok posits the following Addendum to his Motion under 28 U.S.C. §§2255, asserting Ground Four as follows:

### GROUND FOUR

#### II. THE PETITIONER WAS SUBJECT TO INEFFECTIVE ASSISTANCE AS COUNSEL FAILED TO MOVE PRETRIAL FOR REMOVAL OF JUDGE SEIBEL

** Petitioner realleges his basis for ineffective assistance as set forth in Ground One and further says:

### 28 U.S.C. §§455 STANDARD

Subsection 455(a) of Title 28 provides that, "any justice, judge or magistrate of the United States shall disqualify [Herself] in any proceeding in which [Her] impartiality might reasonable be questioned." 28 U.S.C. §§455(a). This subsection governs circumstances that constitute an appearance of partiality even though actual partiality has not been shown. Chase Manhattan Bank v. Affiliated FM Ins. Co., 343 F.3d 120, 127 (2d Cir. 2003), citing Liljeberg v. Health Servs.

Acquistion Corp., 486 U.S. 847, 860, 100 L.Ed.2d 855, 108 S.Ct. 2194 (1988), cert. dismissed, 124 S.Ct. 1652 (2004).

## The Second Circuit Standard

The Second Circuit has interpreted 28 U.S.C. §§455 as asking whether "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal or alternately, whether a reasonable person, knowing all the facts, would question the judge's impartiality." United States v. Yousef, 327 F.3d 56, 169 (2d Cir. 2003)(quoting United States v. Lovaglia, 954 F.2d 811, 815 (2d Cir. 1992)(citation omitted), cert. denied, 124 S.Ct. 353 (2003).

Indeed, as espoused in Liteky "judicial rulings alone **almost** never constitute a valid basis for bias or partiality, unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."

## The Aborted Sentencing Hearing And Pro Se Recusal Request

As previously asserted in Petitioner's operative §§2255 motion at 3, the Petitioner was tried by a jury and after a nearly three-week trial, on October 24, 2012, the jury found Petitioner guilty of attempt and conspiracy to commit mail fraud (count one), frauds and swindles (count two), conspiracy to defraud the United States (count three), bankruptcy fraud (count four), tampering with a witness, victim, or informant (count five), making false statements or entries (count six), and destruction, alteration, or falsification of records in federal investigations (count seven).

The Petitioner was set to be sentenced before Judge Cathy Seibel on May 29, 2013. However, prior to this sentencing hearing, while still incarcerated, the Petitioner penned a letter to Judge Seibel, dated 5/16/13. see Sent. Trans. – dated 5/29/13

2.

Petitioner's letter advised the court that he intended to replace Attorney Dawn Florio with Attorney Gerald Saluti and brought to the Court's attention disturbing information he had come upon while incarcerated, showing that the Asst. U.S. Attorney John P. Collins was Judge Seibel's subordinate Assistant United States Attorney while [She] was Deputy United States Attorney in the Southern District of New York. **Sent. Trans. at 20-21**

Additionally, Petitioner's letter, which referenced the infamous "Whitey Bulger Case - First Circuit", where the Federal Judge removed himself from the case because he was a government prosecutor while the government was building its case against the defendant, points out that Judge Seibel was Deputy U.S. Attorney (S.D.N.Y.) during the time-frames of August 2005 through July 2008.

Confronted with these facts, Judge Seibel, as demonstrated by the transcript, became dismissive by first labeling Petitioner's idicia of potential partiality as an "illogical leap", then, in further defense sought Asst. U.S. Attorney Collins's (of all people) take on what transpired with respect to the investigative time-frames associated with the investigation of Petitioner's government case. **Sent. Trans. at 21**

The **Court at 21**: "...But let me ask for the record: When did this case become an open matter in the US Attorney's office?"

**Mr. Collins**: "Your Honor, I went back to take a look at the folder, obviously, after receiving the letter, and according to the label on the folder I believe, I don't remember if it was January -- I think it was January 21, '09, the case was initiated from taking a look at the -- from taking a look at the, a quick look at the label on the folder, the folder that was generated."

The **Court**: "And those labels are generated by the case initiate form?"

Mr. Collins: "Yes. Yes, they are."

The Court: "Well, it sounds like the case was."

Mr. Collins: "I'm sorry, Your Honor."

The Court: "Go ahead."

Mr. Collins: "Just one second. Obviously some of this actually was -- I beleive some -- there was a letter from Judge Morris to Ms. Feinzig that -- and I don't remember the exact date of the letter and I have not been able to find it -- the letter may have, the letter may have preceded, and in fact I think it did precede, July 2008, but the case was not initiated or opened according to the folder until January 21, 2009. But those letters, I believe after Mr. -- I'm just asking Mr. Alberts, but if memory serves me correct, we provided those, the Judge Morris referral letters, to the defense during the course of the trial in conjunction with Mr. Small's testimony. After Mr. Small's testimony."

The Court: "Well, let me ask a question. I know from my experience that supervisors in the US Attorney's office get letters and sometimes they don't do anything with them right away and sometimes they refer them to a law enforcement agency and then come back to the US Attorney's office and other times the letter is given immediately to an assistant and if the paperwork isn't done right, the case isn't opened until later."

"Do you have a record of any Assistant US Attorney doing work on the case before July 2009 or before the end of July 2009?"

Mr. Collins: "I'm sorry, January --"

The Court: "Excuse me, end of July 2008."

4.

Mr. Collins: "No, I don't have any recollection, and, in fact, my first conversation with Judge Morris after I received the referral letter and I believe -- and I'm trying to remember if either Mr. Burke or Mr. Marsh was with me But I can -- Judge Morris's reaction was that nothing had been done, and she communicated her strong displeasure to me during the course of that first phone conversation. So it became clear to me that I was the first person to I think address some of her issues because she was --"

The Court: "And that was in January of '09?"

Mr. Collins: I believe so, your Honor. I don't have any recollection other than taking a quick look at the case initiation file."

The Court: And noboby worked on it before you?"

Mr. Collins: "No. The only other person I received the letter from -- I have a recollection of receiving the letters from Ms. Feinzig and being assigned the case."

The Court: "All right. Well, it seems clear to me, a few things seem clear to me:

One, that this case was not active in the US Attorney's office when I was still there, and, therefore, this is unlike the Whitey Bulger case in that there the judge was still in the office while the case was being built;

Two, even if it had been opened, I recuse in those circumstances in an excess of caustion, But I think it's legally required, and I certainly didn't know a thing about this case until it came to my attention in my capacity as a judge;

Third, the fact that Mr. Collins and Mr. Alberts were Assistant US Attorneys at the time I was the Deputy US Attorney and, thus, I was in their supervisory chain of command doesn't mean anything. In fact, there are many prosecutors and defense lawyers who appear in

5.

front of me as to whom the same thing could be said. Having been in that office for may years, there are many AUSAs and many private lawyers who I supervised at one time or another and the same is true of many judges and it is not grounds for recusal."

Whereupon, the Court unceremoniously ended her analysis without perceiving any "potential" partiality on her part.

**Bias By Definition: Blacks Law Dictionary - Eighth Edition @2004**

**Judicial Bias:** "A judge's bias toward one or more of the parties to a case over which the judge presides. Judicial Bias is usu. insufficient to justify disqualifying a judge from presiding over a case. To justiify disqualification or recusal, the judge's bias usu. must be based on some extrajudicial reason."

**Implied Bias:** "Prejudice that is inferred from the experiences or relationships of a judge, juror, witness, or other person. - Also termed presumed bias."

Owing to this "rubric", the Petitioner asserts that the record clearly indicates that Judge Seibel should have recused herself from hearing this case of United States of America v. Andrew Bartok, Crim. Case No. 7:10-CR-510-CS.

Starting with Petitioner's letter, dated 5/16/13 he referenced the similarilty between his case and the precedent set in the Whitey Bulger case, where the judge removed himself from the case because he was a government prosecutor while the government was building its case against the defendant [bulger]."

Second, none of the answers provided by Asst. U.S. Attorney Collins was under oath, as such are not sufficient evidence or reliable evidence withstanding the need for Judge Seibel's recusal. see United States v. Arboleda, 20 F.3d 58, 61 (2d Cir. 1994), asserting that "statements of counsel are not evidence."

6.

Third, Judge Seibel's own statements, contruing them to be true demonstrate an **implied bias**, considering [Her] dismissive conclusions:

"Two, even if it had been opened, I recuse in those circumstances in an excess of caution, But I don't think it's legally required, and i certainly didn't know a thing about this case until it came to my attention in my capacity as a judge;

Third, the fact that Mr. Collins and Mr. Alberts were Assistant U.S. Attorneys at the time that I was the Deputy US Attorney and, thus, I was in their supervisory chain of command doesn't mean anything.."

On the Contrary, the <u>Liteky</u> Court held that "a favorable or unfavorable predisposition can be characterized as wrongful or inappropriate even though it springs from the facts adduced or the events occurring at trial, if the perdisposition...is so extreme as to display clear inability to render fair judgment. <u>Id</u>. at 550-51."

Whereas, in the Whitey Bulger case there was evidence of a predisposition owing the the judge's prior employment with the Dept. of Justice about the time the government was building a case against Bulger, much the same can be said about the <u>Bartok</u> case, where the Asst. US Attorney was **not** sworn to an oath before he spoke **and** that his **answers were all in retrospect**, without any evidence to sustain anything he spoke about.

Consequently, because the Petitioner was not afforded effective counsel, in that counsel <u>did</u> **not** either object to the <u>un</u>substantiated hearing, Bartok is entitled to re-hearing of this matter under oath <u>and</u> retrial, to the extent, the Court should have "errored on the side of caution" and recuse herself.

**The Second Recusal Request**

On or about September 26, 2013, the Petitioner crafted an "Application for Recusal", while his counsel (Attorney Attias) filed a "Supplemental Memorandum on Rule 33", as the Court termed it. **Judicial Notice of Pet. App. For Recusal - dated 9/26/13**

The Court addressed the filings as follows: **Dkt. 191 at 2:**

**The Court:** "I think the first thing we should discuss is recusal. I have Ms. Attias' not really a motion but request, and then I have also from Mr. Bartok a pro se application I guess I'll call it, I assume you all got this. it looks like it was e-mailed from Mr. Bartok to his son who may be the one who then mailed it, dated September 26th. And it's signed by Mr. Bartok on September 28th. I've actually got two. One is about recusal and one is a supplemental memorandum on Rule 33.
    Everyboby get both of those?"

The gist Petitioner's "Application" was addressed to Judge Seibel's "implied bias", to the extent she was [the] supervising attorney with the Dept. of Justices' White Plains Bureau and thereby supervised AUSA Collins and AUSA Alberts during her tenure. As such, it was inappropriate for [Her] to be Judge or this matter, as there appeared to be an overlap with respect to the government's building of the case against Mr. Bartok and the supervising AUSAs Collins and Alberts.[1]

**The Court (page 4):** "I left the United States Attorney's Office at the end of July, 2008, so this was not an open matter in the United States Attorney's Office when I was an assistant. It was opened in 2009. I have I'll call it a policy, a personal policy of recusing myself in matters that were open in the United States Attorney's Office when I was there on the theory that as Deputy U.S. Attorney

[1] The Petitioner was not forwarded page 3 of this transcript for some reason

8.

I theoretically supervised all cases in the office."...

"I think that policy represents an excess of caution. I don't know that I would have to recuse on a case that I knew absolutely nothing about.. Because this case was not an open matter in the United States Attorney's Office during my tenure, it doesn't fall under the policy."

Then, without as much as pausing to consider what she had previous stated, Judge Seibel goes on to tell what [She] knew about the case during her tenure:

**The Court (page 5):** "That said, it looks like a supervisor in the United States Attorney's Office did essentially two things while i was there relating to the case. One is she spoke to Judge Morris, which I have absolutely no knowledge of, and she made a request of the postal inspectors to look into the matter, of which I also have absolutely no knowledge. I can reaffirm that I never heard of mr. Bartok or Revelations of anything about this case until it came to my attention in my capacity as a judge."

The Petitioner argues that because this line of testimony by Judge Seibel appears to contradict what she previously stated about having no prior knowledge of the case against Andrew Bartok <u>and</u> consider the Judge stated that as Deputy U.S. Attorney she supervised all cases, without stating how many supervisors there were at that time, it appears she should have recused herself in this matter form the start , rather than prejudice Mr. Bartok with implied bias.

## Conclusion:

Because the Court should have recused [Herself] form handling this case from its inception (indictment) and because statements of the Asst. U.S. Attorney Collins explaining what occurred in building the case against Mr. Bartok were not either under oath <u>or</u> evidence, <u>United</u>

9.

States v. Arboleda, 20 F.3d 58, 61 (2d Cir. 1994), and Mr. Bartok's pretrial counsel(s) were ineffective for failing to argue this claim to the District Court, he was prejudice in that the record, including the transcripts demonstrate contention between Mr. Bartok and his counsel(s) and prejudice to him as he clearly had a valid cause for recusal. Consequently, a hearing is in order to assess demeanor of counsel under oath and garnting of his §§2255 relief. [2]

I hereby certify under 28 U.S.C. §§1746 and the laws of the United States that the foregoing is true and correct.  Executed 7/6/2015

                              Respectfully Submitted,
                              The Petitioner

                              Andrew Bartok
                              Reg. No. 85300-054
                              FCI Loretto
                              P.O. Box 1000
                              Loretto, Pennsylvania 15940

---

[2] Petitioner request the Court an Order To Show Cause directed at the U.S. Attorney

10.

## CERTFICATE OF SERVICE [3]

I hereby certify that on this _6th_ day, ~~June~~ July 2015 I caused a true copy of the foregoing to be served on counsel(s) of record via the provisions of 28 U.S.C. §§2255, the District Court's CM/ECF <u>and</u> via U.S. First Class Mail upon any party unable to accept electronically filed documents, including:

AUSAs
John Collins
Jeffrey Alberts
Office of the U.S. Attorney
300 Quarropas Street, 3rd fl.
White Plains, New York 10601
john.collins@usdoj.gov
jeffrey.alberts@usdoj.gov

By: _Andrew Bartok_ (AB)

Andrew Bartok
No. 85300-054

---

[3] All Exhibits <u>and</u> Affidavit served herewith.

## EXHIBIT A

### USA V. RASHON COSTON - PARTIAL DOCKET NO. 5:11-CR-272-NAM-1

Re: §§2255 - Andrew Bartok

## EXHIBIT A

## USA V. RASHON COSTON - PARTIAL DOCKET NO. 5:11-CR-272-NAM-1

Re: §§2255 - Andrew Bartok

# U.S. District Court
## Northern District of New York - Main Office (Syracuse) [LIVE - Version 5.0.3] (Syracuse)
### CRIMINAL DOCKET FOR CASE #: 5:11-cr-00272-NAM-1
### Internal Use Only

Case title: USA v. Coston
Related Case: 5:12-cv-01716-NAM

Date Filed: 06/09/2011
Date Terminated: 11/09/2012

---

Assigned to: Judge Norman A. Mordue

Appeals court case number: 12-4622
2nd Circuit

### Defendant (1)

Rashod Coston
*TERMINATED: 11/09/2012*

represented by Rashod Coston
19156-052
CANAAN
U.S. Penitentiary
Inmate Mail/Parcels
P.O. BOX 300
Waymart, PA 18472
PRO SE

James F. Greenwald
Office of the Federal Public Defender -
Syracuse Office
Districts of Northern New York &
Vermont
The Clinton Exchange, 3rd Floor
4 Clinton Square
Syracuse, NY 13202
315-701-0080
Fax: 315-701-0081
Email: james.greenwald@fd.org
*TERMINATED: 11/16/2012*
*Designation: Public Defender or
Community Defender Appointment*

Melissa A. Tuohey
Office of the Federal Public Defender -
Syracuse Office
Districts of Northern New York &
Vermont
The Clinton Exchange, 3rd Floor
4 Clinton Square

Exhibit A - 3 pages

Syracuse, NY 13202
315-701-0080
Fax: 315-701-0081
Email: melissa.tuohey@fd.org
*TERMINATED: 09/12/2011*
*Designation: Public Defender or*
*Community Defender Appointment*

Pending Counts

18:1029A.F PRODUCES/TRAFFICS
IN COUNTERFEIT DEVICE
(1)

Disposition

27 months imprisonment; 3 years
supervised release. Restitution in the
amount of $46,518.51 less any
payments.

Highest Offense Level (Opening)

Felony

Terminated Counts

None

Disposition

Highest Offense Level (Terminated)

None

Complaints

None

Disposition

---

Plaintiff

USA

represented by  Gwendolyn E. Carroll
Office of the United States Attorney -
Syracuse
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261-7198
315-448-0672
Fax: 315-448-0954
Email: gwendolyn.e.carroll@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/09/2011 | 1 | INDICTMENT as to Rashod Coston (1), Count 1. (mae) (Entered: 06/10/2011) |
| 06/09/2011 | 2 | Minute Entry for Grand Jury proceedings held before Judge David N. |

| | | |
|---|---|---|
| | | Hurd: GRAND JURY makes a partial report and returns Indictment. Tally Sheet is ordered sealed. (Steno: David Robinson, Clerk: Shelly Muller) (mae) Modified file date on 6/10/2011. (mae) (Entered: 06/10/2011) |
| 06/16/2011 | | Set/Reset Hearings as to Rashod Coston: Initial Appearance and Arraignment set for 6/24/2011 at 3:00 PM in Syracuse before Magistrate Judge David E. Peebles. (sal, ) (Entered: 06/16/2011) |
| 06/24/2011 | | Attorney update in case as to Rashod Coston. (sal, ) (Entered: 06/24/2011) |
| 06/24/2011 | | TEXT Minute Entry for proceedings held before Magistrate Judge David E. Peebles: Initial Appearance as to Rashod Coston held on 6/24/2011. The Deft. fails to appear for the proceeding scheduled for 3:00 PM today. The court has been in communication with the Deft. and he was aware of the time of the proceeding today. The Deft. stated over the phone at about 3:05 PM that he was looking for a parking space outside the Federal Building. Judge notes that it is now 3:28 PM and the Deft. still has not appeared. Defendant's counsel advises that she has spoken to the Deft. and he indicated he would be here. Probation also interviewed the Deft. over the phone. Judge issues a bench warrant due to the Deft's. failure to appear today. APP: Gwendolyn Carroll, AUSA, Melissa Tuohey, Asst. FPD, and USPO: Ellen Phillips. Court Reporter: Jodi Hibbard. (sal, ) (Entered: 06/24/2011) |
| 06/24/2011 | | TEXT Minute Entry for proceedings held before Magistrate Judge David E. Peebles: Arraignment as to Rashod Coston (1) Count 1 held on 6/24/2011. The Deft. appears at 3:55 PM today for an arraignment. The Deft. is advised of his rights. Maximum penalty of charges is stated. Financial Affidavit is reviewed and Judge finds the Deft. eligible for appointment of counsel. Judge appoints the OFPD as counsel. The Deft. waives formal reading of the Indictment and enters a not guilty plea to the offenses charged. The Gov't. moves for detention of the Deft. based on serious risk of flight and notes that there is an outstanding warrant issued out of Rockland County. Defendant's counsel states that he lives with his mother in the Syracuse, NY area and requests release of the Deft. on conditions. Judge contemplates release of the Deft. on conditions. The USMS notes that even if the court releases him, they will have to take the Deft. into custody to answer the outstanding felony warrant in Rockland County. Judge orders the Deft. detained pending a detention hearing. Detention hearing is set for 6/28/11 at 2:00 PM before Magistrate Judge Peebles. The Deft. is remanded to the custody of the USMS pending the detention hearing. APP: Gwendolyn Carroll, AUSA, Melissa Tuohey, Asst. FPD, and USPO: Ellen Phillips. Court Reporter: Jodi Hibbard. (sal, ) (Entered: 06/24/2011) |
| 06/24/2011 | | Set/Reset Hearings as to Rashod Coston: Detention Hearing set for 6/28/2011 at 2:00 PM in Syracuse before Magistrate Judge David E. Peebles. (sal, ) (Entered: 06/24/2011) |
| 06/24/2011 | 4 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Rashod |

## EXHIBIT B

## FORM AO - 190 (Rev. 01/09)

Re: §§2255 - Andrew Bartok

# UNITED STATES DISTRICT COURT

for the

United States of America )
)
v. )
) Case No.
)
)
_____
Defendant

## RECORD OF THE NUMBER OF GRAND JURORS CONCURRING IN AN INDICTMENT

As the foreperson of the grand jury of this court at a session held at _____ on

_____, I certify that *(specify number)* _____ grand jurors concurred in the indictment in this case.

Under Fed. R. Crim. P. 6(c), this record is being filed with the court clerk and will *not* be made public unless the court orders otherwise.

Date: _____      _____
*Foreperson's signature*

## EXHIBIT C

## 6/9/10 INDICTMENT - SIGNATURE PAGE

Re: §§2255 - Andrew Bartok

18, United States Code, Section 1341.

## OVERT ACTS

3.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about September 18, 2007, ANDREW BARTOK, the defendant, and a co-conspirator not named herein ("CC-1"), caused a bankruptcy petition to be filed in the United States Bankruptcy Court for the Southern District of New York in White Plains, New York.

2

Case 7:10-cr-00510-CS   Document 21   Filed 06/09/10   Page 3 of 3

*United States v Andrew Bartok*
*US District Court S. D. N. Y.*
*Case # 7:10-cr-00510-CS*

b.   On or about June 6, 2009, ANDREW BARTOK and CC-1 caused a bankruptcy petition to be filed in the United States Bankruptcy Court for the Southern District of New York in Poughkeepsie, New York.

(Title 18, United States Code, Section 1349.)

_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

## EXHIBIT D

## 7/19/10 INDICTMENT - SIGNATURE PAGE

Re: §§2255 - Andrew Bartok

(Title 18, United States Code, Section 1512(k).)

### COUNT FIVE

(Obstruction of Justice Concerning
the "Kathleen Kelly" Examination and Production of Documents)

The Grand Jury further charges:

18. From in or about June 2006 through in or about

July 2006, in the Southern District of New York and elsewhere,

ANDREW BARTOK, KATHLEEN ADDARIO, a/k/a "Kathleen Kelly," a/k/a

"Kate Adams," a/k/a "Kathy Adams," the defendants, knowingly

altered, destroyed, mutilated, concealed, covered up, falsified,

and made a false entry in a record, document, and tangible object

with the intent to impede, obstruct, and influence the

investigation and proper administration of a matter within the

jurisdiction of a department and agency of the United States and

a case filed under title 11, and in relation to and contemplation

of such matter and case, to wit, ANDREW BARTOK, KATHLEEN ADDARIO,

a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy Adams,"

did not produce documents at a July 21, 2006 examination at the

14

*United States v Andrew Bartok*
*U. S. District Court  S D N Y*
*Case # 7:10-cr-00510-CS*

Office of the United States Trustee that had been ordered to be

produced by the Honorable Cecelia G. Morris in a June 19, 2006

order.

(Title 18, United States Code, Sections 1519 & 2.)

FOREPERSON

PREET BHARARA
United States Attorney

## EXHIBIT E

## 1/31/11 INDICTMENT – SIGNATURE PAGE

Re: §§2255 - Andrew Bartok

(Obstruction of Justice Concerning
the "Kathleen Kelly" Examination and Production of Documents)

The Grand Jury further charges:

43.  From in or about June 2006 through in or about
July 2006, in the Southern District of New York and elsewhere,
ANDREW BARTOK, a/k/a "Drew Bartok," and KATHLEEN ADDARIO, a/k/a
"Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy Adams," the
defendants, knowingly altered, destroyed, mutilated, concealed,
covered up, falsified, and made a false entry in a record,
document, and tangible object with the intent to impede,
obstruct, and influence the investigation and proper

28

administration of a matter within the jurisdiction of a
department and agency of the United States and a case filed under
Title 11, and in relation to and contemplation of such matter and
case, to wit, BARTOK and ADDARIO did not produce documents at a
July 21, 2006 examination at the Office of the United States
Trustee that had been ordered to be produced by the Honorable
Cecelia G. Morris in a June 19, 2006 order.

(Title 18, United States Code, Sections 1519 & 2.)

_____                    _____
FOREPERSON                               PREET BHARARA
                                         United States Attorney

*United States v Andrew Bartok*
*7:10-cr-00510-CS*
*United States District Court*
*S.D.N.Y.*

## EXHIBIT F

## 9/7/11 INDICTMENT - SIGNATURE PAGE

Re: §§2255 - Andrew Bartok

## EXHIBIT G

## INDICTMENTS - GARCIA, MARTINEZ, SILVER, GARCIA

### SIGNATURE PAGES

Re: §§2255 - Andrew Bartok

    c.    has been placed beyond the jurisdiction of

        the Court;

    d.    has been substantially diminished in value;

        or

    e.    has been commingled with other property which

        cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21,
United States Code, Section 853(p), to seek forfeiture of any
other property of the said defendant up to the value of the above
forfeitable property.

        (Title 21, United States Code, Section 853.)

_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

*United States v Walter Garau*
*S1 11 Cr. 989 (JSR)*
*United States District Court*
*S. D. N. Y.*

c.   has been placed beyond the jurisdiction of
the Court;

d.   has been substantially diminished in value;
or

e.   has been commingled with other property which
cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), to seek forfeiture of any

other property of the defendants up to the value of the above

forfeitable property.

(Title 21, United States Code, Sections 841(a)(1) and 853.)


_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

United States v Roberto Martinez
1:11-cr-00445-NRB
U.S. District Court
S.D.N.Y

5

value of the above forfeitable property, including but not limited
to all of SILVER's right, title, and interest in:

a.    Any pension fund to which SILVER may be
entitled as a result of his employment as a member of the New York
State Assembly and as Speaker of the New York State Assembly.

(Title 18, United States Code, Section 981,
Title 21, United States Code, Section 853, and
Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

United States v Sheldon Silver
U.S. District Court S.D.N.Y.
Case number

24

title, and interest in the properties listed in paragraphs 46(a) through paragraph 46(m) of this Indictment as set forth above.

### Substitute Asset Provision

47.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendants, up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 982 and 1957.)

FOREPERSON

_Preet Bharara_
PREET BHARARA
United States Attorney

SHELDON SILVER
CASE: 51-15-CR. D93(VEB3)

## Substitute Assets Provision

6.    If any of the above-described forfeitable

property, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due

          diligence;

    b.    has been transferred or sold to, or deposited

          with, a third person;

    c.    has been placed beyond the jurisdiction of

          the Court;

    d.    has been substantially diminished in value;

          or

    e.    has been commingled with other property which

          cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), to seek forfeiture of any

other property of the said defendant up to the value of the above

forfeitable property.

          (Title 21, United States Code, Section 853.)


PREET BHARARA
United States Attorney

United States v Walter Garcia
S1 11 Cr. 989 (JSR)
United States District Court
S. D. N. Y.                    -3-

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
[White Plains Division]

ANDREW BARTOK                    .        CRIM. NO. 7:10-CR-510-CS
     Defendant-Petitioner, "       Hon. Cathy Seibel
                     .

V.                               *

                     .
UNITED STATES OF AMERICA          *
     Plaintiff-Respondent. .

### AFFIDAVIT OF ANDREW BARTOK

I hereby certify pursuant to 28 U.S.C. §§1746 and the laws of the United States that the proceeding is true and correct.

1. I am at least eighteen years of age and understand the obligations of an oath.

2. I am the Defendant-Petitioner in the above captioned-case.

3. Although I was alleged to have been indicted by the United States Attorney Preet Bharara via his signature onto to an alleged grand jury approved "indictments" on 4 occassions, I observed multiple examples of divergencies in the signature lines of my verses other alleged "indictments" signed by the United States Attorney [Preet Bharara].

4. There were several extension of time requested by the government on behalf on 5/12/10 and 6/9/10. However, I neither agreed to the extensions of time, nor was my permission requested by the AUSAs McQuaid and Collins.

Executed 7/6/2015

The Petitioner,

Andrew Bartok
Reg. No. 85300-054
FCI Loretto
P.O. Box 1000
Loretto, Pennsylvania 15940

Re: Affidavit - Andrew Bartok [page 2]

2.

## CERTIFICATE OF SERVICE

I hereby certify that on this _6th_ day, July 2015 I caused a true copy of the foregoing to be served on counsel(s) of record via the provisions of 28 U.S.C. §§2255, the District Court's CM/ECF and via U.S. First Class mail upon any party unable to accept electronically filed documents, including:

AUSAa
John Collins
Jeffrey Alberts
Office of the U.S. Attorney
300 Quarropas Street, 3rd Fl.
White Plains, New York 10601
john.collins@usdoj.gov
jeffrey.alberts@usdoj.gov

By: _Andrew Bartok_

Andrew Bartok
No. 85300-054

11.

July 6, 2015

Mr. Andrew P. Bartok
Federal Correctional Institution
P.O. Box 1000
Loretto, PA 15940-1000

Honorable Cathy Seibel
United States District Court
for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

RE: 2nd Addendum to 28 U.S.C. § 2255 Motion

Dear Judge Seibel:

In addition to the reasons for your recusal already set forth
in the addendum, her honor must also recuse herself from the
28:2255 matter because of past bias shown to wit:

1. the Court ordered Defendant to sell his Mercedes and to
use the proceeds from said sale to pay attorney fees for then
defense counsel Peter Till. This action was extra-judicial;

2. at sentencing the Court evinced extreme hostility laden
bias against Defendant by stating that Defendant was the
worse most despicable person that the Court had ever
encountered as a defendant in the 25 years spent as a
prosecutor and judge; that Defendant was a mini-Madoff; and
that the Court did not understand why Defendant's wife had
not left him yet.

As the Court is well aware, several months ago Defendant
filed a complaint against the Court with Chief Judge Robert
A. Katzmann of the Second Circuit Court of Appeals pursuant
to the Rules for Judicial-Misconduct and Judicial Disability
Proceedings (case no. 02-14-90093-jm ) which is pending
and alleges that the Court committed the foregoing bias. This
fact coupled with the bias already shown would make it
impossible for the Court to render a fair and impartial
decision in Defendant's 28:2255 motion.

ANDREW BARTOK

This page produced by Court Services is for personal use only and has the same legal effect as other documents. Misuse may be a violation of federal law. This pagination is not for use for court cost.




U.S. POSTAGE
PAID
LORETTO,PA
15940
JUL 08, 15
AMOUNT
$0.00
00057266-06

1021

10007

# PRIORITY MAIL

DATE OF DELIVERY SPECIFIED *

USPS TRACKING™ INCLUDED *

INSURANCE INCLUDED *

PICKUP AVAILABLE

* Domestic only

USED INTERNATIONALLY,
CUSTOMS DECLARATION
L MAY BE REQUIRED.

Mail

STATES
ERVICE®

EP14F July 2013
OD: 12.5 x 9.5

7690-16-000-7948
Label 400, Jan. 2013

TRACKING #

4431 4456 0912 36

FROM:

⇔85300-054≈
Andrew P Bartok
Federal Correctional Institution
P. O. Box 1000
Loretto, PA 15940-1000
United States

TO:

⇔85300-054⇔
Clerk U S District Ct
500 Pearl ST
U S Courthouse
NEW YORK, NY 10007-1312
United States

Clerk
United States District Court
500 Pearl Street
New York, NY 10007-1312



VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

UNITED STATES
POSTAL SERVICE®